SLIP OPINION

Cite as 2015 Ark. 80

# SUPREME COURT OF ARKANSAS

No. CV–14–559

| | |
|---|---|
| DANA CAROL ABRAHAM, M.D., and GARY HOOKER | **Opinion Delivered** February 26, 2015 |
| APPELLANTS | |
| V. | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, SECOND DIVISION [NO. 60CV2013-2089] |
| JOSEPH M. BECK, M.D., CHAIRMAN, ARKANSAS STATE MEDICAL BOARD; THE ARKANSAS STATE MEDICAL BOARD; and THE STATE OF ARKANSAS | HONORABLE CHRISTOPHER CHARLES PIAZZA, JUDGE |
| APPELLEES | AFFIRMED. |

**ROBIN F. WYNNE, Associate Justice**

Dana Abraham, M.D., and Gary Hooker appeal from an order of the Pulaski County Circuit Court denying their motion for summary judgment and granting the cross-motion for summary judgment filed by the intervenor-defendant, the State of Arkansas. This case concerns the constitutionality of a statute requiring physicians to receive prior approval from the Arkansas State Medical Board in order to dispense legend drugs.[1] Our jurisdiction is

---

[1] "Legend drug" means a drug limited by section 503(b)(1) of the Federal Food, Drug, and Cosmetic Act to being dispensed by or upon a medical practitioner's prescription because the drug is:
  (i) Habit-forming;
  (ii) Toxic or having potential for harm; or
  (iii) Limited in its use to use under a practitioner's supervision by the new drug application for the drug.
Ark. Code Ann. § 20-64-503(6)(A).

pursuant to Ark. Sup. Ct. R. 1–2(b)(6) (2014).  We affirm the order of the circuit court.

*Background*

Dr. Dana Abraham is a breast oncology surgeon licensed to practice medicine in the State of Arkansas.  Her application to the Arkansas State Medical Board for a permit to dispense legend drugs was denied at the Board's December 2–3, 2010 meeting.  Dr. Abraham filed two actions in the Pulaski County Circuit Court, one appealing from the Board's decision under the Administrative Procedure Act and one seeking declaratory and injunctive relief on the grounds that Act 515 of 1983 was unconstitutional.  Those cases, along with a Freedom of Information Act case filed by Dr. Abraham's attorney related to the proceedings before the Board, were consolidated below into case number CV2010-7400, styled *Abraham v. Pierce*.  In that case, Dr. Abraham challenged Act 515, codified at Arkansas Code Annotated section 17-95-102; the Board's Regulation 12 implementing Act 515; the application form; and the Board's procedure relating to the "showing of need."  At the time, section 17-95-102, titled "Legend drugs; requirements," provided as follows:

> (a) A dispensing physician is a physician licensed under the Arkansas Medical Practices Act, § 17-95-201 et seq., § 17-95-301 et seq., and § 17-95-401 et seq., who purchases legend drugs to be dispensed to his or her patients for the patients' personal use and administration outside the physician's office.
>
> (b) This section shall not apply to physicians who only dispense drugs in injectable form unless they are controlled substances, in which case the section shall fully apply.
>
> (c) The dispensing physician shall:
>
>> (1) Personally dispense legend drugs, and the dispensing of such drugs may not be delegated;

SLIP OPINION

(2) Keep records of all receipts and distributions of legend drugs. The records shall be subject to inspection by the proper enforcement authority and shall be readily accessible for inspection and maintained in a central registry; and

(3) Label legend drugs with the following information:

(A) Patient's name and address;

(B) Prescribing physician's address and narcotic registry number issued by the Drug Enforcement Administration of the United States Department of Justice;

(C) Date of dispensing; and

(D) Directions and cautionary statements, if any, as required by law.

(d) No physician licensed under the Arkansas Medical Practices Act, § 17–95–201 et seq., § 17–95–301 et seq., and § 17–95–401 et seq., shall dispense legend drugs without *prior approval by the Arkansas State Medical Board after application to the board and on the showing of need.* Licensed physicians who were dispensing in the ordinary course of their practice for the twelve (12) months immediately prior to July 4, 1983, shall be exempt from the requirements of this subsection.

(e) *The board shall enforce the provisions of this section and is authorized and directed to adopt regulations to carry out its purpose.*

Ark. Code Ann. § 17–95–102 (Repl. 2010) (emphasis supplied).  The Board's Regulation

No. 12 provided that any nonexempt physician who desired to dispense legend drugs was

required to apply to the Board on a form provided for that purpose and was required "to

demonstrate the need for such dispensing of legend drugs prior to receiving approval."  The

regulation further provided, "Violation of the provision of Act 515 of 1983 or violations

of these regulations shall constitute 'unprofessional conduct' and shall subject the violator

to disciplinary action . . . ."  The application form asked the physician to provide a list of

drugs she wished to dispense, reasons why she wished to dispense drugs, the "location of

3

nearest two (2) drug stores," and "approximate miles from [her] office"; the physician was required to swear under oath to the answers and "certify" that she would "personally fill, label, and dispense" all drugs dispensed by her.

Dr. Abraham filed a motion for summary judgment, and on January 17, 2013, the circuit court entered an order granting her motion and declaring Arkansas Code Annotated section 17-19-202(d) unconstitutional as follows:

(1)     The language "showing of need" contained in this statute is vague and ambiguous and;
(2)     The statute constitutes special legislation and;
(3)     Regulation 12 (section #2) and portions of the Application Form related to a "showing of need" exceeds the Arkansas State Medical Board's authority in that the Legislature reposed absolute, unregulated or undefined authority in the Board to use unbridled discretion to determine need for issuance of a permit and that therefore, the A.C.A. § 17-95-102(d) which requires physicians to obtain approval by the Arkansas State Medical Board to dispense legend drugs is void.

Accordingly, the circuit court enjoined the Board from "denying or requiring dispensing permits to physicians based on the statute as well as the Medical Board's Regulation 12 (section #2) and portions of the Application form related to a 'showing of need.'"

After the ruling in *Abraham v. Pierce*, the General Assembly amended the statutory provision that the circuit court had declared unconstitutional by passing Act 1169 of 2013. On May 17, 2013, Dr. Abraham, for herself and other physicians similarly situated, and Gary Hooker[2] ("appellants") filed a complaint for declaratory judgment and injunctive relief

---

[2]According to the complaint, Gary Hooker is a resident of Pulaski County; president of NuParadigm, a "Point-of-Care" pharmaceutical dispensing program installer; and a patient who desires a choice in having his prescriptions filled by a physician or a pharmacist.

SLIP OPINION

SLIP OPINION

against Joseph M. Beck, M.D., Chairman, Arkansas State Medical Board, and the Arkansas State Medical Board. Appellants alleged that Act 1169 is unconstitutional as special legislation; vague and ambiguous; an unlawful delegation of authority; and that requiring a physician to "show need" constitutes an unlawful restraint of trade in violation of Arkansas and federal law. Act 1169 of 2013 amended Arkansas Code Annotated section 17-95-102(d) to read as follows:

> (d)(1) A physician licensed under the Arkansas Medical Practices Act, § 17-95-201 et seq., § 17-95-301 et seq., and § 17-95-401 et seq., shall not dispense legend drugs without prior approval by the Arkansas State Medical Board after application to the board and on the showing of need.
>
> (2) Licensed physicians who were dispensing in the ordinary course of their practice before April 12, 2013, shall be exempt from the requirements of this subsection.
>
> (3) The board shall determine whether need exists for a physician to dispense a specific legend drug to the physician's patient for a patient's personal use and administration outside of the physician's office based on such information as is necessary for the board to determine:
>
>> (A) The legend drug or drugs that the physician requests to dispense;
>>
>> (B) The ability of a physician's patient to obtain the legend drug from other medical professionals;
>>
>> (C) The availability of the legend drug to be prescribed by the physician;
>>
>> (D) The hours at which the legend drug may be obtained from other medical professionals;
>>
>> (E) The distance the physician's patient must travel to obtain the legend drug from other medical professionals;
>>
>> (F) Whether the physician has been investigated by the board concerning the improper prescribing or use of a legend drug;



(G) Whether the physician has a financial relationship with the manufacturer of a legend drug that would create the appearance of a conflict of interest;

(H) Whether the physician dispensing a legend drug will foster cost containment through improved efficiency and productivity; and

(I) The procedures the physician has implemented to:

> (i) Assure compliance with the requirements of subsection (c) of this section;
>
> (ii) Monitor and guard against potential drug interactions;
>
> (iii) Store and safeguard the legend drugs; and
>
> (iv) Comply with § 20-7-601 et seq. concerning the reporting requirements to the Prescription Drug Monitoring Program.

(4) A prescription for a topical medication is exempt from subdivision (d)(3) of this section.

Act of Apr. 12, 2013, No. 1169, 2013 Ark. Acts 4737 (codified at Ark. Code Ann. § 17-95-107(d) (Supp. 2013)).

Appellants served the attorney general with a copy of the complaint as required by Arkansas Code Annotated section 16-111-106 (Repl. 2006). The Board and Chairman Beck filed their answer on June 17, 2013, and the State filed a motion to intervene on August 8, 2013. Appellants filed an amended complaint, which set forth in relevant part the following:

> Plaintiffs seek a declaratory judgment declaring that Act 1169 of 2013, i.e., an amendment of ARK. CODE ANN. § 17-95-102(d), requiring that a licensed physician make application before the Medical Board for a permit to dispense "on the showing of need" and Medical Board Regulation 12 and its "Form" (1) is null and void on its face; (2) violates the Arkansas and United States constitutions and federal laws; (3) constitutes special legislation; exceeds the Medical Board's authority and violates Arkansas law and laws of the United States; (4) exceeds the Medical

Board's authority and violates the Arkansas Constitution and laws of the United States; and (5) the Medical Board should be enjoined from denying permits as a matter of discretion on the basis of factors exceeding the scope of the Medical Board's statutory authority and which are unconstitutional.

Appellants then filed a motion for summary judgment and supporting brief. In the brief, appellants included the facts set out in the motion for summary judgment in Dr. Abraham's previous case and "undisputed facts since the filing for summary judgment in *Abraham v. Pierce*," setting out the legislative history of Act 1169. Appellants argued that the principles of res judicata and collateral estoppel applied to bar further litigation of the following issues: (1) the constitutionality of Arkansas Code Annotated section 17-95-102(d); (2) the language of "showing of need" being unconstitutionally vague and ambiguous; (3) the statute being special legislation; and (4) whether Regulation 12 and the form exceeded the scope of the Board's authority and resulted in an unlawful delegation of authority. The State and the Board responded, and the State's response included a cross-motion for summary judgment. Appellants filed a combined reply and response to the cross-motion for summary judgment. The circuit court held a hearing on February 11, 2014, at which time the court granted the State's cross-motion for summary judgment. The order granting the State's cross-motion and denying appellants' motion for summary judgment was entered on March 19, 2014. Appellants timely appealed.

*Standard of Review*

Ordinarily, on appeal from a summary-judgment disposition, the evidence is viewed in the light most favorable to the party resisting the motion, and any doubts and inferences are resolved against the moving party. *Hobbs v. Jones*, 2012 Ark. 293, 412 S.W.3d 844. However, in a case where the parties agree on the facts, we simply determine whether the appellee was entitled to judgment as a matter of law. *Id.* When parties file cross-motions for summary judgment, as was done in this case on this point, they essentially agree that there are no material facts remaining, and summary judgment is an appropriate means of resolving the case. *Id.* As to issues of law presented, our review is de novo. *Id.*

*Standing*

We first address whether appellants have standing in the present case. In their response briefs, both the State and the Board contend that Dr. Abraham lacked standing because she failed to exhaust her administrative remedies and she was required to raise her constitutional challenges to the Board before bringing them to the circuit court. The cases cited by appellees stand for the proposition that in bringing an appeal under the Administrative Procedure Act, a plaintiff is required to first raise all arguments, including constitutional arguments, before the administrative agency in order to exhaust her administrative remedies; failure to raise and develop arguments before the agency means that they are not preserved for appellate review. *E.g.*, *AT & T Commc'ns of the Sw., Inc. v. Ark. Pub. Serv. Comm'n*, 344 Ark. 188, 198, 40 S.W.3d 273, 280 (2001) (In an appeal from an order of the Public Service Commission, this court wrote, "Raising such constitutional issues before the Commission is significant even when a statute is challenged as

8

unconstitutional on its face, especially since the interpretation given by the agency charged with its execution is highly persuasive.").

Appellants, however, did not bring the present case under the Administrative Procedure Act; they filed a complaint for declaratory judgment and injunctive relief under Arkansas Rules of Civil Procedure 57 (Declaratory Judgments) and 65 (Injunctions and Temporary Restraining Orders) and Arkansas Code Annotated section 16–111–101 et seq. (The Arkansas Declaratory Judgment Act). Arkansas Code Annotated section 16–111–102, titled "Legislative Intent," provides the following: (a) This chapter is declared to be remedial; (b) Its purpose is to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations; (c) This chapter is to be liberally construed and administered. Arkansas Code Annotated section 16–111–104 provides that "[a]ny person . . . whose rights, status, or other legal relations are affected by a statute . . . may have determined any question of construction or validity arising under the . . . statute . . . and obtain a declaration of rights, status, or other legal relations thereunder."

This court has held that in the proper circumstances, where the plaintiff has no pending claims before an agency and raises a facial challenge, an exhaustion of administrative remedies is not necessary to bring an action under the Declaratory Judgment Act. *Clinton v. Bonds*, 306 Ark. 554, 816 S.W.2d 169 (1991) (whether there was an administrative adjudication is not relevant where the sole issue is the constitutionality of the act in question); *McGhee v. Ark. State Bd. of Collection Agencies*, 368 Ark. 60, 68, 243 S.W.3d 278, 285 (2006) (holding that the exhaustion of administrative remedies was not applicable

because McGhee had no pending action before the Board that required her to also raise her constitutional challenge; therefore, she was not prohibited from filing her action for declaratory judgment in circuit court); *see also Gallas v. Alexander*, 371 Ark. 106, 263 S.W.3d 494 (2007).

In sum, there was no requirement that appellants raise their facial challenge to the constitutionality of Act 1169 to the Board or that Dr. Abraham apply for a permit before bringing the declaratory action in circuit court. Accordingly, appellants had standing to bring the present law suit.[3]

*Res Judicata*

Appellants argue that litigation of the matters that the circuit court decided in *Abraham v. Pierce* is barred by the doctrine of res judicata in this case as to the following factual and legal determinations: that section 17-95-102(d) is special legislation; the "showing of need" and "need" requirements of section 17-95-102(d) are unconstitutionally vague; the showing of need requirements contained in Regulation 12 and the Board's Form are unconstitutionally vague; the Board's procedure for issuing permits is outside its authority and the "showing of need" requirement is an unconstitutional delegation of authority. Additionally, they make the related argument that "the State is collaterally

---

[3]Appellees also argue that Mr. Hooker lacks standing because he is not a person whom Act 1169 regulates and he presents no justiciable controversy. Because they failed to raise this argument to the trial court, we will not address it on appeal. *See, e.g.*, *Seymour v. Biehslich*, 371 Ark. 359, 368, 266 S.W.3d 722, 730 (2007).

SLIP OPINION

SLIP OPINION

estopped from denying res judicata because it had the ability to participate and challenge the potential ruling in *Abraham v. Pierce* and declined to do so."

The concept of res judicata has two facets, one being issue preclusion and the other claim preclusion. *Huffman v. Alderson*, 335 Ark. 411, 414, 983 S.W.2d 899, 901 (1998). We view appellants' arguments as involving issue preclusion, but neither issue preclusion nor claim preclusion is applicable in the present case. Collateral estoppel, also known as issue preclusion, bars relitigation of issues of law or fact previously litigated by a party. *Johnson v. Union Pac. R.R.*, 352 Ark. 534, 544, 104 S.W.3d 745, 750 (2003). The elements of collateral estoppel are as follows: (1) the issue sought to be precluded must be the same as that involved in the prior litigation; (2) the issue must have been actually litigated; (3) it must have been determined by a valid and final judgment; and (4) the determination must have been essential to the judgment. *Id*. In *Johnson v. Union Pacific R.R.*, this court adopted the offensive use of collateral estoppel, which prevents a defendant from relitigating a defense, approved by the United States Supreme Court in *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322 (1979). This court held that the offensive use of collateral estoppel should be available only in limited cases, and that the trial court should be given broad discretion to determine if it should be applied.

The problem with appellants' attempt to apply the doctrine of res judicata—either issue preclusion or claim preclusion—in the present case is that the previous case involved Act 515, while the present case involves Act 1169. Appellants argue that the cornerstone of both Acts is the "showing of need" language and that the circuit court has made a final

ruling on "the underlying issues of, among other things, the constitutionality of A.C.A. §

17-95-102(d) and vagueness." Here, although appellants present the same challenges to Act

1169 that Dr. Abraham did to Act 515, the intervening changes to the statute are

substantial; thus, the constitutionality of Act 1169 was not litigated in the first case. We

hold that res judicata is simply not applicable.

*Amendment of Arkansas Code Annotated section 17-95-102(d)*

Next, appellants argues that a statute that was declared unconstitutional and void

cannot be amended. She cites case law in which this court has held that once a statute is

declared unconstitutional, the statute is a nullity and in legal contemplation is as inoperative

as if it had never been passed. *See, e.g.*, *Weiss v. McFadden*, 356 Ark. 123, 127, 148 S.W.3d

248, 251 (2004). While she acknowledges that the General Assembly has the power to

change a statute prospectively, *see Federal Express Corp. v. Skelton*, 265 Ark. 187, 578 S.W.2d

1 (1979), she argues that the legislature was "undoubtedly trying to reverse the ruling" in

this case. She points out that Act 1169 includes the "showing of need" language that the

circuit court ruled was unconstitutionally vague in *Abraham v. Pierce* and that Act 1169

amends section 17-95-102(d). Appellants have cited no authority holding that a legislative

enactment that prospectively amends a statutory provision previously declared

unconstitutional by a court is void. We affirm on this point.

*Void for Vagueness*

Appellants argue that Act 1169 is unconstitutionally vague. In essence, they argue

that the addition of the nine determinations that the statute sets out for the Board to

consider in assessing the need for a physician to dispense legend drugs does nothing to cure the vagueness that the circuit court found regarding Act 515. In fact, they argue that the nine items leave the Board with even more discretion to make arbitrary and capricious decisions because the items themselves are unclear as to what information must be provided or what standard must be met. Appellants give examples of ambiguities and state, "In the final analysis, the Court can look at the nine items, take any situation it wants, and there is no way to make any informed prediction on how the Board would rule on an application."

It is well settled that a law is unconstitutionally vague under due-process standards if it does not give a person of ordinary intelligence fair notice of what is prohibited, and it is so vague and standardless that it allows for arbitrary and discriminatory enforcement. *Craft v. City of Fort Smith*, 335 Ark. 417, 424, 984 S.W.2d 22, 26 (1998). When a person brings a "pre-enforcement facial challenge" to the vagueness of a law, the relevant inquiry is whether the ordinance is "impermissibly vague in all of its applications." *Id*. In other words, under the constitutional standard applicable to facial challenges, the proponent must establish that "no set of circumstances exists under which the Act would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987).

The subject matter of the challenged law also determines how stringently the vagueness test will be applied. *Id*. For instance, if the challenged law infringes upon a fundamental right, such as liberty or free speech, a more stringent vagueness test is applied.

*Id*. In contrast, if the law merely regulates business activity, a less stringent analysis is applied and more flexibility is allowed. *Id*.

All statutes are presumed constitutional and this court resolves all doubts in favor of constitutionality. *Landmark Novelties, Inc. v. Ark. State Bd. of Pharmacy*, 2010 Ark. 40, at 12, 358 S.W.3d 890, 898. The party challenging a statute's constitutionality has the burden of proving that the act is unconstitutional. *Id*.

Here, Act 1169 regulates business activity, meaning that a less stringent standard is applied. The people regulated by the statute—physicians—know that dispensing legend drugs without prior approval from the Board is prohibited. The nine factors give guidance as to what the Board must consider when determining whether need for a dispensing permit has been shown. Dr. Abraham has failed to show that Act 1169 is impermissibly vague in all of its applications. Therefore, we affirm on this point.

*Unconstitutional Delegation of Authority/Board Exceeding its Authority*

Under this section of their argument, appellants argue that under Act 1169 and the Board's new application form, the Board is still able, even after considering nine items, to determine "need" after a "showing" with no standards or guidance. They contend that this is an unconstitutional delegation of legislative authority. Under our constitutional doctrine of separation of powers the functions of the Legislature must be exercised by it alone. *Walden v. Hart*, 243 Ark. 650, 652, 420 S.W.2d 868, 870 (1967). That power cannot be delegated to another authority. *Id*. (citing Ark. Const. art. 4; *Oates v. Rogers*, 201 Ark. 335, 144 S.W.2d 457 (1940)). This court has held that discretionary power [as to a law's

14

SLIP OPINION

execution] may be delegated by the legislature to a state agency as long as reasonable guidelines are provided. *Hobbs v. Jones*, 2012 Ark. 293, at 10, 412 S.W.3d 844, 852. This guidance must include appropriate standards by which the administrative body is to exercise this power. *Id.* A statute that, in effect, reposes an absolute, unregulated, and undefined discretion in an administrative agency bestows arbitrary powers and is an unlawful delegation of legislative powers. *Id.* Here, the list of nine factors provides reasonable guidelines by which the Board is directed to exercise its authority to carry out Act 1169.

Appellants also argue that the Board has no authority to issue dispensing permits because nothing in the statute speaks of "granting permits." However, the Board must give "prior approval" to any physician wishing to dispense legend drugs, and appellants have cited no authority preventing the Board from issuing permits upon approval as a mechanism for exercising their duty under the statute.

We affirm on this point.

*Special Legislation*

Next, appellants contend that Act 1169 constitutes unconstitutional special legislation, passed for the purpose of inhibiting competition from physician dispensing to protect the economic interests of pharmacists. Amendment 14 to the Arkansas Constitution provides, "The General Assembly shall not pass any local or special act." Legislation is special "if by some inherent limitation or classification it arbitrarily separates some person, place or thing from those upon which, but for such separation, it would operate." *Whorton v. Dixon*, 363 Ark. 330, 336, 214 S.W.3d 225, 230 (2005). The determinative factor is

whether the General Assembly acted in an arbitrary manner to separate one class of persons from another, and we apply the rational-basis test to determine whether such a separation is arbitrary. *Id.*

Here, the emergency clause of Act 1169 provides the following:

It is found and determined by the General Assembly of the State of Arkansas that this act regulates the dispensing of legend drugs; that physicians and patients require certainty about the prescriptive authority of physicians and the availability of legend drugs . . . .

Thus, as argued by the appellees, Act 1169 fulfills three legitimate governmental objectives: (1) regulation of the dispensing of legend drugs by physicians; (2) providing certainty about the prescriptive authority of physicians; and (3) providing certainty about the availability of legend drugs. Regulating the dispensing of legend drugs by physicians is rationally related to these objectives, and we hold that there is a rational basis for singling out physicians in the dispensing of legend drugs because physicians are in the unique position of having the power to prescribe these drugs. We affirm on this point.

Affirmed.

*Samuel A. Perroni*; and *Tim Dudley*, for appellants.

*Hope, Trice, O'Dwyer & Wilson, P.A.*, by: *Kevin M. O'Dwyer*, for separate appellees Joseph M. Beck, M.D., and The Arkansas State Medical Board.

*Dustin McDaniel*, Att'y Gen., by: *Colin R. Jorgensen*, Ass't Att'y Gen., for separate appellee State of Arkansas.