Cite as 2019 Ark. App. 374

# ARKANSAS COURT OF APPEALS

DIVISION I
No. CV-18-516

| | |
|---|---|
| THE CITY OF MAGNOLIA<br><br>APPELLANT<br><br>V.<br><br>DENNIS MILLIGAN, IN HIS OFFICIAL CAPACITY AS TREASURER OF THE STATE OF ARKANSAS; LARRY ATKINSON, IN HIS OFFICIAL CAPACITY AS COUNTY JUDGE FOR COLUMBIA COUNTY; AND SELENA BLAIR, IN HER OFFICIAL CAPACITY AS COUNTY TREASURER FOR COLUMBIA COUNTY<br><br>APPELLEES | Opinion Delivered: September 11, 2019<br><br>APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, THIRTEENTH DIVISION [NO. 60CV-15-3961]<br><br>HONORABLE W. MICHAEL REIF, JUDGE<br><br>AFFIRMED |

## WAYMOND M. BROWN, Judge

In 1992, the City of Magnolia ("Magnolia" or "the City") had to close its landfill after the Environmental Protection Agency found chemicals and other contaminants in the groundwater of the surrounding land. The Magnolia landfill was Columbia County's largest in the area, receiving most of the trash collected from the other cities in Columbia County as well as from the county itself. With the landfill closing, Magnolia, the county, and the other municipalities urgently needed to find a new way to dispose of their trash.

To solve the problem, the General Assembly amended the tax code to allow local governments to levy sales and use taxes to finance the operation, maintenance, or rental expense of a solid waste management system.[1] The county followed with an ordinance that levied a one percent sales tax throughout the county and called a special election for approval of the tax. Additionally, the county and the cities entered into a cooperative agreement to establish a county-wide solid waste management system that would be administered by the county quorum court and financed through the 1 percent tax.

The voters of Columbia County approved the tax on April 21, 1992. Appellee Dennis Milligan ("Milligan" or "the Treasurer") thereafter remitted the proceeds of the tax directly to the county.

The unified solid waste management system worked well until 2015, when Magnolia filed a petition for a declaratory judgment against Milligan, county judge Larry Atkinson, and county treasurer Selena Blair.[2] Magnolia argued that it was entitled to its per capita share of the revenue from the sales and use tax. According to the City, the cooperative agreement, in which the county and each of the cities pledged their share of the tax revenue to the solid waste management system, was repealed by an ordinance that the county quorum court enacted in 1998. Magnolia argued that in the absence of a cooperative agreement or other voter-approved means of directing all the tax proceeds to the county, Arkansas law required the Treasurer to remit Magnolia's per capita share of the proceeds from the sales and use tax

---

[1]*See* Act of March 11, 1992, No. 40, § 1, 1992 Ark. Acts 4456, 4457; Ark. Code Ann. § 26-73-113(a)(2)(A) (Supp. 2017).

[2]We will hereafter refer to Atkinson and Blair as "the County Appellees."

directly to the City. The circuit court disagreed and granted summary judgment in favor of Milligan and the County Appellees. We affirm.

## I. *Facts and Procedural History*

On March 16, 1992, shortly after the General Assembly amended section 26–73–113 to allow the proceeds of local sales and use taxes to be used to finance the operation, maintenance or rental expense of a solid waste management system,[3] the Columbia County Quorum Court passed Ordinance 92-2 to levy a sales and use tax for that purpose. The ordinance explained the need for the tax, stating that "the Magnolia Municipal Landfill into which Columbia County deposits solid waste from the residents of Columbia County is currently at capacity and will, in the immediate future, be closed down by governmental entities[.]" Consequently, "Columbia County and the municipalities will need a means of collecting, disposing of, and hauling solid waste from Columbia County to other locations[.]" The ordinance also provided that the county would be responsible for the new solid waste collection system, declaring that "it [was] the desire of Columbia County to provide weekly door to door pickup for all residents of Columbia County and for residents of each municipality in the County and to provide for the disposal of such solid waste in an environmentally safe and acceptable manner[.]"

Noting also that Columbia County "wish[ed] to finance . . . a solid waste management system to deal with all aspects of solid waste within the county and municipalities[,]" the ordinance levied "a sales and use tax . . . at a rate of one percent (1%)" on goods sold within the county. The ordinance further provided that the county "wish[ed]

---

[3]Ark. Code Ann. § 26–73–113(a)(2)(A)(i)–(iii) (Supp. 2017).

to dedicate all proceeds of the sales and use tax" and "use such proceeds for the purpose of developing within Columbia County a Solid Waste Management System." Among other duties, the new solid waste management system would "administer[] the proceeds from the sales and use tax[.]" The ordinance also made it clear that the proceeds of the tax would be used only for solid waste management, providing "[t]hat all revenues derived by the County or the municipalities from the proceeds of such tax are designated for use in solid waste management and for no other reason or purpose."

Ordinance 92-2 also called a special election to approve the tax and provided that the official ballot would read as follows:

> FOR ADOPTION OF A ONE PERCENT (1%) SALES AND USE TAX WITHIN COLUMBIA COUNTY, ARKANSAS, TO BE USED SOLELY FOR SOLID WASTE MANAGEMENT.

> AGAINST ADOPTION OF A ONE PERCENT (1%) SALES AND USE TAX WITHIN COLUMBIA COUNTY, ARKANSAS, TO BE USED SOLELY FOR SOLID WASTE MANAGEMENT.

Finally, Ordinance 92-2 declared that cities and counties would enter into a cooperative agreement, called an interlocal agreement, regarding the solid waste management system. In particular, section 5 of the ordinance provided as follows:

> Each governmental unit within the County which is entitled to receive a proportionate share of the revenues derived from the sales and use tax shall authorize, by appropriate action of its governing body, the approval of and the entering into of an interlocal agreement with and among the other units for the purpose of assigning all revenues from the sales and use tax, to which each governmental unit may be entitled, to the authority for the use by the authority of solid waste collection, disposal, recycling, and compost facilities. Provided, further, that all such governmental units shall execute and deliver such interlocal agreements prior to the date of the special election[.]

4

The county judge and the mayors of each city—including Magnolia—signed the interlocal agreement on March 23, 1992. The agreement declared that all the parties determined that the sales and use tax, which was "pledged for solid waste management purposes and no other," was "the best means of financing a solid waste management system for all persons residing within Columbia County[.]" It further declared that the parties

> determined that all proceeds of the sales and use tax, which may otherwise be receivable by them for revenue purposes, should be pledged to the County for use by the County in the development of a solid waste management system[.]

The agreement also made it clear that the parties intended that the county would be responsible for administering the solid waste management program and tax proceeds, stating as follows:

> [T]he County Court of Columbia County has undertaken responsibility to form and administer a solid waste management system on behalf of all of the citizens of Columbia County and to disburse funds derived from the sales and use tax solely for the purpose of solid waste management.

They agreed, therefore, that the solid waste management would be financed from the proceeds of the sales and use tax and that each party "consent[ed] to the pledge of any proportionate shares of their proceeds which they may be entitled to otherwise receive and the payment of all proceeds of such tax into the solid waste management system to be administered by the County Court of Columbia County, Arkansas." The voters subsequently approved the sales and use tax on April 21, 1992, and the Treasurer thereafter remitted the proceeds of the tax directly to Columbia County.

On September 4, 1998, the quorum court in Columbia County enacted Ordinance 98.9 to amend the purpose and use of the sales and use tax. The ordinance provided that 25 percent of the total net collections would be used to retire bonds that Columbia County

issued to finance a new county jail. Ordinance 98.9 also called a special election on the question of the changed use and purpose.

The voters in Columbia County approved the proposed 25 percent diversion on October 8, 1998, whereupon the quorum court enacted Ordinance 98.15. The new ordinance amended Ordinance 92-2, which originally levied the sales and use tax, to authorize the pledge of 25 percent of the net proceeds of the tax to retire the bonds for the new jail. Ordinance 98.15 also repealed section 5 of Ordinance 92-2, which required the cities and the county to execute the interlocal agreement pledging their shares of the tax proceeds to the new solid waste management system. According to Ordinance 98.15, "all Net Collections are paid directly to the County under the Authorizing Legislation and are not divided among the County and any municipalities therein"; therefore, "Section 5 of Ordinance No. 92-2 is hereby repealed and deleted."

Several years later, on June 23, 2015, Parnell Vann, the mayor of Magnolia, wrote a letter to Milligan "to request that [his] office remit to the City of Magnolia its per capita share of the proceeds of Columbia County's one percent (1%) sales and use tax levied under Ark. Code Ann. § 26-73-113 for solid waste management." The mayor claimed that "Magnolia's portion of the tax was paid to Columbia County pursuant to a Solid Waste Management System Interlocal Agreement," which "pledged each city's portion of the tax to solid waste management and authorized the county to act as the agent for all the cities in developing and administering a solid waste management system."

Mayor Vann told the Treasurer that "Columbia County [recently] repudiated the interlocal agreement and [has] taken the position that it was repealed in 1998 by Ordinance

6

98.15." The mayor also pointed out that "the 1992 and 1998 ballots were silent as to any method of distribution of the tax." Therefore, according to the mayor, Magnolia should start receiving its share of the tax proceeds under Ark. Code Ann. § 26-74-214(b)(2)(B)(i) (Supp. 2017), providing that

> [i]f the ballot is silent on the method of distribution [of the proceeds of the sales and use tax], it shall be per capita among the county and each municipality located within the county unless an interlocal agreement is executed between the affected county and its municipalities indicating a different distribution.

Consequently, Mayor Vann requested that the Treasurer "stop remitting the City of Magnolia's share of this tax to Columbia County and instead remit the same directly to the City of Magnolia[.]"

Mayor Vann also explained how Magnolia would use its per capita share once it received it from the Treasurer. According to the mayor,

> [u]pon receipt of its share of the tax, it is the City's intent to assume responsibility for solid waste management within the City and to use the City's portion of this tax only for that purpose. This tax was approved by voters only for use in solid waste management, and that is the only purpose for which the City of Magnolia will use its per capita share of those funds.

The Treasurer disagreed that he was required to follow section 26-74-214(b)(2)(B)(i) and denied Mayor Vann's request. The Treasurer maintained that he must continue remitting the tax only to Columbia County, which was the governmental entity that actually levied the tax. Specifically, the Treasurer explained that "the Tax in question was levied pursuant to Ark. Code Ann. § 26-73-113, which incorporates the sales and use tax provisions of the Local Government Bond Act of 1985[.]" The Treasurer asserted that the Local Government Bond Act (LGBA) did not further incorporate the per capita remittance procedure in section 26-74-214(b)(2), as Mayor Vann suggested. Rather, the LGBA has its

7

own remittance procedure, providing that "[s]ales and use taxes levied by counties under Ark. Code Ann. § 26-73-113 are distributed only to the levying county and not to the municipalities located therein." Consequently, the Treasurer explained that he had "no authority to distribute the tax proceeds in a manner inconsistent with Ark. Code Ann. § 26-73-113" and its incorporated procedures from the LGBA.

Magnolia thereafter filed a petition for a judgment declaring that the City was entitled to "its per capita share of the tax levied by Columbia County Ordinance 92-2 pursuant to Ark. Code Ann. § 26-73-113," as well as "its per capita share of the surplus proceeds of the tax accumulated since Columbia County's repudiation of the Solid Waste Management System Interlocal Agreement[.]" As Mayor Vann asserted in his letter, the City alleged that section 26-74-214(b)(2)(B)(i) required remittance of Magnolia's per capita share directly to the City because two conditions warranting per capita distribution under the statute—the silence of the 1992 and 1998 ballots as to distribution of the tax and the alleged repeal of the interlocal agreement—had occurred.

The parties subsequently filed cross-motions for summary judgment. The circuit court denied Magnolia's motion and granted summary judgment in favor of the Treasurer and the County Appellees. The circuit court observed that the LGBA requires the Treasurer to remit the tax proceeds only to the municipality or the county that levied the tax, here Columbia County, and "[t]he remittance language of Arkansas Code Annotated § 26-74-214 is simply not incorporated into the LGBA" or, by extension, into section 26-73-113.

The circuit court also suggested that the alleged repeal of the interlocal agreement was of no consequence because it was unnecessary in the first place. The Treasurer was

always required to remit the tax to the county, with or without a local agreement, under section 26-73-113 and the LGBA. Finally, the circuit court ruled that paying Magnolia its per capita share would violate the illegal exaction clause. The City now appeals the circuit court's order.

II. *Issues on Appeal*

The City argues that the circuit court erred when it ruled that the Treasurer was not required to follow the per capita remittance procedure in section 26-74-214(b)(2). According to the City, the provisions of the LGBA, which are expressly incorporated into section 26-73-113, direct the Treasurer to follow section 26-74-214(b)(2)(B)(i), and the only conditions that would warrant remitting the money directly to Columbia County—a ballot or interlocal agreement specifying that method of distribution—now do not exist.

The Treasurer and the County Appellees respond that the alleged repeal of the interlocal agreement is immaterial for two reasons. First, because the Treasurer was always bound to follow the remittance provision in the LGBA, section 14-164-336, that requires payment of the tax only to the governmental unit that levied it in the first place—here Columbia County—it simply was not necessary for Magnolia and the other municipalities to pledge their share of the tax proceeds in the interlocal agreement. Secondly, the LGBA plainly does not direct the Treasurer to the remittance procedures in section 26-74-214(b)(2).

The Treasurer and the County Appellees additionally argue that diversion of any part of the sales tax to Magnolia would constitute an illegal exaction that is prohibited by article 16, section 11 of the Arkansas Constitution. According to the appellees, the voters of

9

Columbia County authorized only "a single, county-wide tax, to be used for a unified, county-wide solid waste management system," and per capita distribution of the tax to Magnolia for the mayor's stated purpose of operating a separate solid waste system would violate the illegal-exaction clause.

III. *Standard of Review*

A circuit court may grant summary judgment only when it is apparent that no genuine issues of material fact exist requiring litigation and that the moving party is entitled to judgment as a matter of law.[4] Once the moving party has established a prima facie entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact.[5]

"Ordinarily, on appeal from a summary-judgment disposition, the evidence is viewed in the light most favorable to the party resisting the motion."[6] "[I]n a case where the parties agree on the facts," however, this court "simply determine[s] whether the appellee was entitled to judgment as a matter of law."[7] Indeed, "[w]hen parties file cross-motions for summary judgment . . . they essentially agree that there are no material facts

---

[4]*Blevins v. Hudson*, 2016 Ark. 150, at 3, 489 S.W.3d 165, 167.

[5]*Id.*

[6]*Abraham v. Beck*, 2015 Ark. 80, at 8, 456 S.W.3d 744, 751.

[7]*Id.* at 8, 456 S.W.3d at 751–52.

remaining, and summary judgment is an appropriate means of resolving the case."[8] "As to issues of law presented, [this court's] review is de novo."[9]

IV. *Discussion*

As we indicate above, Magnolia's case turns on whether the statute that authorized the sales and use tax, section 26-73-113, incorporates the per capita remittance procedure in section 26-74-214(b)(2). As straightforward as that question may seem, its answer depends on an examination of a series of statutes in Arkansas's tax code. Accordingly, we set forth the relevant statutes before discussing the merits of Magnolia's argument.

We start with the LGBA, which is now codified at Arkansas Code Annotated sections 14-164-301 to −340. In 1985, the General Assembly enacted the LGBA in response to the voters' approval of Amendment 62, which granted "county and municipal governments expanded powers and authority with respect to the creation of bonded indebtedness for capital improvements of a public nature[.]"[10] Among other things, the LGBA authorized counties and municipalities to use more than real and personal property taxes to retire bonds for capital improvements, providing that sales and use taxes may also be used for that purpose:

> In lieu of or in addition to the levying of an ad valorem tax to retire bonds for capital improvement purposes . . . the legislative body of a municipality or county may adopt an ordinance levying a local sales and use tax in the amount of one-eighth of one percent (0.125%), one-fourth of one percent (.25%), one-half of one percent

---

[8]*Id.* at 8, 456 S.W.3d at 752.

[9]*Id.*

[10]Ark. Code Ann. § 14-164-302 (Supp. 2017).

(0.5%), three-fourths of one percent (.75%), one percent (1%), or any combination of these amounts to retire the bonds[.]"[11]

The LGBA also set forth procedures for the administration, collection, and remittance of the sales and use taxes. Regarding the collection of the tax, the Act provided that the director of the Department of Finance and Administration would follow the same procedures used for the collection of other taxes, including county sales taxes pursuant to Arkansas Code Annotated sections 26-74-201 to –219 (Repl. 2008).[12]

Regarding the remittance of collected taxes, the LGBA created a trust fund that "shall be known as the Local Sales and Use Tax Trust Fund."[13] The trust fund "shall be held apart from the State Treasury by the Treasurer of State" and "shall be administered by the Treasurer of State as provided in this section, in addition to the other duties of the Treasurer of State prescribed by law."[14] Specifically, the LGBA requires the state treasurer to deposit the tax money "as cash funds into the Local Sales and Use Tax Trust Fund" and to

> transmit monthly to the treasurer of the municipality or county, as the case may be, or in the alternative, to a bank or other depository designated by the municipality or county, the moneys of the municipality or county held in the Local Sales and Use Tax Trust Fund established by his subchapter, subject to the charges payable and retainage authorized by §§ 26-74-201–26-74-219[.][15]

---

[11]Ark. Code Ann. § 14-164-327(a) .

[12]*See* Ark. Code Ann. § 14-164-333(a)(1)–(2).

[13]Ark. Code Ann. § 14-164-336(a).

[14]*Id.*

[15]Ark. Code Ann. § 14-164-336(b)–(c).

In 1991, the General Assembly determined that counties and municipalities lacked sufficient financial resources to "maintain and finance capital improvements of a public nature and to provide services to their inhabitants[.]"[16] Consequently, the legislature enacted Act 777 of 1991 to enable local governments to use some of its taxing authority to levy taxes for other purposes in addition to retiring bonds, as originally authorized under the LGBA.

Codified at Arkansas Code Annotated section 26-73-113, the new law provided that any municipality or county may levy a sales and use tax of up to one percent "[i]n lieu of any other municipal or county sales and use tax," in order to "finance the operation or maintenance of capital improvements" as well as to "secure the repayment of bonds."[17] Additionally, as we indicate above, the law was further amended in 1992 to authorize counties and municipalities to use sales and use taxes—as Columbia County did here—to finance the operation, maintenance, or rental expense of a solid waste management system.[18]

Significantly for our purposes here, Arkansas Code Annotated section 26-73-113 does not provide any procedure for the collection and remittance of the special-purpose sales and use tax(es) that it authorizes. Rather, it incorporates the procedures set forth in the LGBA, providing as follows:

> To the extent permitted by this section, a governing body levying a tax under this section shall follow the procedures prescribed by the Local Government Bond Act of 1985, § 14-164-301et seq., and the new tax shall be collected, reported, and

---

[16]Act of March 26, 1991, No. 777, § 6, 1991 Ark. Acts 2369, 2370.

[17]Ark. Code Ann. § 26-73-113(a)(1)–(2) (Supp. 1991).

[18]Ark. Code Ann. § 26-73-113(a)(2)(A).

remitted in the same manner and at the same time as a tax levied under the Local Government Bond Act of 1985, § 14-164-301 et seq.[19]

In the instant case, the parties disagree over the scope of the procedures that are incorporated through section 26-73-113(b). Magnolia argues that section 14-164-333(a) directs the Treasurer to the procedures outlined in section 26-74-214, including the per capita remittance procedure in section 26-74-214(b), which, in relevant part, provides as follows:

> (2)(A)(i) [t]he Treasurer of State shall monthly transmit to the county treasurer and to the city treasurer of each municipality located in a county levying the tax authorized in this subchapter and all other subchapters authorizing county sales and use taxes their per capita share, if any, of the moneys received by the Treasurer of State from all of the sales taxes levied by the county and credited to the account of the county in the Local Sales and Use Tax Trust Fund.
>
> . . . .
>
> (B)(i) If the ballot is silent on the method of distribution, it shall be per capita among the county and each municipality located within the county unless an interlocal agreement is executed between the affected county and its municipalities indicating a different distribution.

Magnolia argues, moreover, that it should be receiving its per capita share under these provisions principally because the interlocal agreement, which it claims once directed Magnolia's share to the county, no longer exists.

In response, Milligan and the County Appellees argue that the circuit court did not err by disregarding section 14-164-333, and its alleged redirection to the per capita remittance provisions in section 26-74-214, because section 14-164-333 "only refers to the

[19]Ark. Code Ann. § 26-73-113(b).

14

[c]ollection functions of the [Department of Finance and Administration]" and "makes no reference to the [r]emittance function of the State Treasurer" or any "reference to the State Treasurer at all." The appellees further assert that the Treasurer's remittance function is addressed only in section 14-164-336, which requires the Treasurer to distribute the tax money solely to the local government that levied the tax. Any reference to section 26-74-214, they say, is only with respect to the Treasurer's duty to withhold "charges payable and retainage" from the remitted funds, as described in Arkansas Code Annotated section 26-74-214(a)(2). The appellees are correct.

This court reviews issues of statutory construction de novo.[20] Additionally, "the first rule in considering the meaning and effect of a statute is to construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language."[21] "When the language of the statute is plain and unambiguous, there is no need to resort to rules of statutory construction."[22] "A statute is ambiguous only where it is open to two or more constructions, or where it is of such obscure of doubtful meaning that reasonable minds might disagree or be uncertain as to its meaning."[23] "When a statute is clear, however, it is given its plain meaning, and this court will not search for legislative intent; rather that intent must be gathered from the plain meaning of the language used."[24] Indeed, "[t]his court is

---

[20]*E.g.*, *City of Fort Smith v. Carter*, 364 Ark. 100, 108, 216 S.W.3d 594, 599 (2005).

[21]*Id.*

[22]*Id.*

[23]*Id.*

[24]*Id.*

very hesitant to interpret a legislative act in a manner contrary to its express language, unless it is clear that a drafting error or omission has circumvented the legislative intent."[25]

Magnolia's argument is not supported by the plain language of the relevant statutes. Section 14-164-333, which according to the City, directs the Treasurer to follow section 26-74-214(b)(2)'s per capita remittance procedure, does not apply to the Treasurer at all; saying only that "the *Director of the Department of Finance and Administration* shall perform all functions incidental to the administration, collection, enforcement, and operation of the tax as provided in sections 26-74-201–26-74-219, [and] 26-74-221[.]"[26] Rather, the state treasurer's remittance of the tax is addressed in section 14-164-336, which provides that

> [t]he Treasurer of State shall transmit monthly to the treasurer of the municipality or county, as the case may be, or in the alternative, to a bank or other depository designated by the municipality or county, the moneys of the municipality or county held in the Local Sales and Use Tax Trust Fund established by this subchapter, subject to the charges payable and retainage authorized by §§ 26-74-201–26-74-219[.][27]

The appellees are also quite correct that section 14-164-336(c)'s reference to the county tax code does not include the per capita remittance procedure in section 26-74-214(b)(2). The plain language of section 14-164-336(c) is directed only to those provisions, such as section 26-74-214(a)(2), that authorize the Treasurer to withhold "charges payable and retainage" from the remitted funds. Accordingly, the statutes do not support Magnolia's argument that since the alleged repeal of the interlocal agreement, section 26-73-113, the LGBA, and

---

[25]*Id.*

[26] Ark Code Ann. § 14-164-333(a)(2)  (emphasis added).

[27]Ark. Code Ann. § 14-164-336(c).

section 26-74-214(b)(2)(B)(i) combine to require the Treasurer to remit the solid-waste tax to the county and municipalities on a per capita basis.[28]

Because we hold that Magnolia is not entitled to a per capita share under the controlling statutes, we need not reach the question of whether payment of Magnolia's per capita share would constitute an illegal exaction.[29] The circuit court's order, therefore, is affirmed.

## V. *Conclusion*

Magnolia's argument for the application of the per capita remittance procedure in section 26-74-214(b)(2) is not supported by the plain language of section 26-73-113 or the provisions of the LGBA that are incorporated therein. Accordingly, we affirm the circuit court's order granting summary judgment in favor of Milligan and the County Appellees.

Affirmed.

GLADWIN AND VAUGHT, JJ., agree.

---

[28]Indeed, the execution of the interlocal agreement—and its alleged repeal—is of no consequence in this case. Magnolia's argument apparently assumes that the Treasurer remitted all the tax proceeds to Columbia County prior to 1998 only as a result of the interlocal agreement. On the contrary, the Treasurer was always required to remit the tax proceeds directly to Columbia County in accordance with section 26-73-113 and section 14-164-336(c). As officials in Columbia County apparently realized in 1998, it simply was not necessary for Magnolia and the other municipalities to pledge their share of the proceeds, as they purported to do in the interlocal agreement.

[29]We reject, however, Magnolia's suggestion that continued payment of the tax to the county after the alleged repeal of the interlocal agreement is itself an illegal exaction. Magnolia's argument is misplaced because it conflates the repeal of section 5 of Ordinance 92-2, requiring the execution of an interlocal agreement, with a repudiation of the agreement itself. There is no indication that Columbia County has abandoned the responsibility it assumed in the interlocal agreement to "administer a solid waste management system on behalf of all of the citizens of Columbia County[.]"

*Bell & Boyd, PLLC*, by: *Michael W. Boyd* and *Karen Talbot Gean*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Patricia Ann Ausdell*, Ass't Att'y Gen., for appellee Dennis Milligan.

*Rose Law Firm*, by: *James M. Fowler, Jr.*, and *Stephen N. Joiner*, for appellees Larry Atkinson and Selena Blair.