Cite as 2022 Ark. App. 38

# ARKANSAS COURT OF APPEALS

DIVISION IV

**No.** CV–21–54

| | | |
|---|---|---|
| JAMES WEST | | **Opinion Delivered** January 26, 2022 |
| | APPELLANT | APPEAL FROM THE PIKE COUNTY CIRCUIT COURT [NO. 55CV-19-72] |
| V. | | |
| SHELTER MUTUAL INSURANCE COMPANY | | HONORABLE CHARLES A. YEARGAN, JUDGE |
| | APPELLEE | AFFIRMED |

## WAYMOND M. BROWN, Judge

Appellant James West appeals the order of the Pike County Circuit Court entered on October 14, 2020, granting summary judgment in favor of appellee Shelter Mutual Insurance Company ("Shelter"). On appeal, West argues that the circuit court erred in granting summary judgment to Shelter because (1) the 1996 Dodge Ram was covered by the Shelter insurance policy; (2) Stacy Mathis was an insured person under the Shelter insurance policy; and (3) Shelter rescinded the insurance policy in violation of Arkansas Code Annotated section 23-89-303.[1] We affirm the circuit court's award of summary judgment to Shelter.

Nancy Mathis applied for an automobile liability insurance policy through Shelter covering a 1996 Dodge Ram. On the insurance application, Nancy stated that she was the

---

[1](Repl. 2014).

owner of the vehicle and claimed her name was on the vehicle's title. No additional drivers or insureds were listed on the application for insurance. Based on Nancy's application, on May 1, 2018, Shelter issued a policy of automobile liability insurance covering the Dodge Ram.

On June 10, 2018, West; Stacy Mathis, Nancy's adult son; and others were involved in a motor-vehicle accident. West, who was riding his motorcycle at the time, alleged to have suffered serious injuries due to Stacy's negligent operation of the Dodge Ram identified on Nancy's insurance policy. Shortly thereafter, per Nancy's request, effective July 1, 2018, Shelter canceled the insurance policy.

West filed a claim for the loss;[2] however, during the investigation of West's claim, Shelter discovered that Nancy was not, and had never been, the registered or titled owner of the Dodge Ram driven by Stacy when the accident occurred. Instead, Shelter determined that Stacy was the sole registered and titled owner of the Dodge Ram,[3] and he was not residing with Nancy at the time of the accident. Shelter, in a September 11, 2018 letter to Nancy, denied liability coverage for the accident, stating:

> Based on our investigation and this policy language, Shelter believes your Policy does not cover this claim. Specifically, you are the only listed "Named Insured" on the Policy Declarations and you do not, nor did you ever, own the 1996 Dodge Ram, the vehicle listed on your Policy. Instead, your adult son, Stacy Mathis, who does not live with you, is the sole registered owner of the 1996 Dodge Ram. Your Automobile Policy only provides Auto Liability Coverages when damages are owed

---

[2]The June 10, 2018 accident involved multiple vehicles. The record indicates that James West, Paige O'Malley, and Austin T. Green sought liability coverage for property damage and bodily injuries they claimed to have sustained as a result of Stacy's negligent operation of the Dodge Ram listed on Nancy's policy.

[3]The Dodge Ram was given to Stacy by his aunt, Juanita Glenn, when he was released from prison.

by an insured, and damages means money an insured is legally obligated to pay another person because of bodily injury or property damage arising out of an accident caused by that insured's ownership, maintenance, or use, of the "described auto" or a "non-owned auto." Because you, the only Named Insured on the Policy do not own the 1996 Dodge Ram (the vehicle listed on the Declarations Page of your Policy), the Dodge Ram does not satisfy the Policy's definition of the "described auto." And, because the 1996 Dodge Ram is the auto listed in the Declarations, it does not qualify as a "non-owned auto." Because of this, your Policy does not provide Auto Liability Coverages for the property damage and bodily injury claims against you.

Therefore, Shelter denies coverage for this claim under this policy.

In a similar letter to Stacy on January 14, 2019, Shelter again denied coverage for the claim and refused to defend Stacy in the underlying lawsuit filed by West.

West then brought this action under Arkansas Code Annotated section 23-89-101,[4] alleging that Stacy was an insured under the liability policy and seeking damages for breach of contract and attorney's fees under Arkansas Code Annotated section 23-79-208[5] for Shelter's refusal to pay the policy limits to satisfy the default judgment obtained against Stacy.[6]

Shelter unsuccessfully sought to remove the case to federal district court. When the matter was remanded to the Pike County Circuit Court, Shelter filed a motion for summary judgment. In response, West filed a cross-motion for summary judgment. Following a

---

[4](Repl. 2014).

[5](Repl. 2014).

[6]West obtained a default judgment against Stacy for his injuries in the amount of $233,136.87.

3

hearing, the circuit court granted summary judgment in favor of Shelter. West now appeals.[7]

A circuit court may grant summary judgment only when it is apparent that no genuine issues of material fact exist requiring litigation and that the moving party is entitled to judgment as a matter of law.[8] Once the moving party has established a prima facie entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact.[9]

"Ordinarily, on appeal from a summary-judgment disposition, the evidence is viewed in the light most favorable to the party resisting the motion, and any doubts and inferences are resolved against the moving party."[10] "[I]n a case where the parties agree on the facts," however, "we simply determine whether the appellee was entitled to judgment as a matter of law."[11] Indeed, "[w]hen parties file cross-motions for summary judgment . . . they essentially agree that there are no material facts remaining, and summary judgment

---

[7]We note that West's notice of appeal references a pending "Plaintiff's Motion for Relief from Judgment" and a "request for a Rule 54(b) certificate." However, neither is included in the record. From our review, we conclude that neither fit the facts of the case and the reference to the postjudgment requests were erroneously included in West's notice of appeal.

[8]*Blevins v. Hudson*, 2016 Ark. 150, 489 S.W.3d 165.

[9]*Id.*

[10]*Abraham v. Beck*, 2015 Ark. 80, at 8, 456 S.W.3d 744, 750.

[11]*Id.* at 8, 456 S.W.3d at 750–51.

4

is an appropriate means of resolving the case."[12] The issues of law presented are reviewed de novo.[13] "De novo review means that the entire case is open for review."[14]

West argues on appeal that both Stacy and the Dodge Ram were covered under Nancy's liability policy through Shelter. He contends that the Dodge Ram was the only insured vehicle on the policy, Stacy had permission to drive the insured vehicle, and West, an innocent third party, was injured as a result of Stacy's negligent driving. West argues that, just prior to the wreck, Shelter issued proof of insurance covering the Dodge Ram, but immediately following the accident denied coverage of the same. He argues that Shelter rescinded coverage and denied the claim stemming from the accident because of fraud and misrepresentation in the initial policy-application materials.

To begin, West contends that Nancy, as the named insured, granted Stacy permission to drive the insured vehicle, the Dodge Ram. West argues that Nancy's consent is evidenced by her fraudulent misrepresentation to Shelter that she owned the truck, the entire point of which was to make it possible for Stacy to drive the Dodge Ram. Therefore, under the theory of permissive use, Stacy was an insured person under the terms of the liability insurance policy.

The Shelter policy defines who is an insured:

Insured means a person included in any of the following categories, but only to the extent stated in that category.

---

[12]*Id*. at 8, 456 S.W.3d at 751.

[13]*Id*.

[14]*Certain Underwriters at Lloyd's, London v. Bass*, 2015 Ark. 178, 461 S.W.3d 317 (citations omitted).

CATEGORY 1
You are an insured for claims arising from your ownership, maintenance, or use of the described auto, and your use of non-owned autos.

CATEGORY 2
(a) Relatives; and
(b) Individuals listed in the Declarations as an "additional listed insured" who do not own a motor vehicle and whose spouse does not own a motor vehicle; are insureds for claims resulting from their use of the described auto and non-owned autos.

CATEGORY 3
Individuals who have permission or general consent to use the described auto are insureds for claims resulting from that use.

The policy further contains the following definitions:

(12)   Described auto means the vehicle listed in the Declarations, but only if a named insured owns that vehicle.

(16)   General consent means the authorization of the owner of an auto to use it on one or more occasions without the necessity of obtaining permission for each use. General consent can be expressed or implied.

(23)   Named insured means any person listed in the Declarations under the heading "Named Insured." Persons listed under other headings are not named insureds unless they are also listed under the heading "Named Insured."

(33)   Permission means the consent of the vehicle owner. Permission can be expressed or implied. An individual who was authorized to use a vehicle by a person in possession of it will be treated as having permission to use it, if he or she reasonably believes that its owner consented to that use.

West does not argue that Stacy was an insured person as defined by Category 1 or 2. West claims that Stacy does, however, meet the definition of an insured person under the plain language of Category 3. We do not agree that under a theory of permissive use, Stacy is an insured person.

By all accounts, Nancy did not own the Dodge Ram, Stacy did. Because the Dodge Ram listed in the Declarations was not owned by the named insured, it failed to meet the

policy definition of described auto. Further, according to the policy definitions, because Nancy, the only named insured, had no ownership of, no interest in, no possession of, or ability to exercise control of the Dodge Ram, she lacked the authority to grant Stacy permission to use the truck. West provided no legal authority to support a conclusion that Nancy, as nonowner of the Dodge Ram, possessed the right to grant Stacy, the sole registrant and owner, permission to drive his own truck. West likewise failed to cite authority for his argument that an owner of a vehicle may be deemed a permissive user of his or her own vehicle. It is well established that we will not consider arguments not supported by convincing argument or citation to legal authority.[15]

West also contends that Shelter rescinded the insurance policy and denied coverage with respect to his claim in violation of Arkansas Code Annotated section 23-89-303(d)(1). He argues that the legislative intent of section 23-89-303(d)(1), which was added to the Code by Act 457 of 1993, was to protect the rights of innocent injured third parties against insurer's attempts to avoid coverage based on fraud or misrepresentation by the insured. Section 23-89-303(d)(1) provides:

> However, an insurer shall not be able to rescind bodily injury or property damage liability coverage under an insurance policy for fraud or misrepresentation with respect to any injury to a third party when suffered as a result of the insured's negligent operation of a motor vehicle.

The plain language of the statute prohibits the *insurer* from rescinding the policy. Here, importantly, and undisputedly, Nancy canceled the insurance policy shortly after the accident. Shelter did not rescind the policy but instead canceled the policy as requested by

---

[15]*City of Little Rock v. Nelson ex rel. Nelson*, 2020 Ark. 19, 592 S.W.3d 666.

Nancy, the insured. Because Shelter, the insurer, did not rescind the policy, we find West's lengthy antirescission argument misplaced.

Additionally, Arkansas Code Annotated section 23–89–303(d)(1) not only prohibits rescission of liability coverage by the insurer for fraud or misrepresentation, but the statute also requires an *insured* to have negligently operated the motor vehicle that caused the injury to the third party. Here, Stacy negligently operated the Dodge Ram, and as discussed above, under the terms of the policy, he was not an insured. Therefore, even if Shelter had rescinded the policy as West contends instead of merely canceling it per Nancy's request, West's antirescission argument would still fail.

Moreover, we find no merit in West's assertion that Shelter's denial of coverage for his claim was based on Nancy's fraud or misrepresentations. Although West contends that Shelter "rescinded" the policy due to Nancy's false claim that she owned the Dodge Ram, there is no evidence in the record that Nancy's misrepresentations served as the basis for Shelter's denial of the claim. In the written denial letter, reasoning provided herein, Shelter expressly denied coverage for West's claim because, pursuant to the liability policy definitions, Stacy was not an insured, and the Dodge Ram was not an insured vehicle. Despite West's contention to the contrary, we find no indication that Shelter based its coverage denial on Nancy's fraudulent statements regarding material facts; rather, Shelter denied West's claim because it was not payable under the terms of the automobile liability insurance policy.

Accordingly, we affirm the circuit court's summary-judgment order granted in favor of Shelter.

8

Affirmed.

ABRAMSON and BARRETT, JJ., agree.

*Taylor King Law*, by: *Brian Trubitt*, for appellant.

*Matthew, Sanders & Sayes, P.A.*, by: *Mel Sayes* and *James T. Sayes*, for appellee.