

# SUPREME COURT OF ARKANSAS

**No.** CV–16–304

| | |
|---|---|
| | **Opinion Delivered:** March 30, 2017 |
| ARKANSAS STATE POLICE RETIREMENT SYSTEM AND KIRK BRADSHAW, JOHN W. ALLISON, BRANT TOSH, BLAKE WILSON, DONNIE UNDERWOOD, JOE MILES, AND DR. JOHN SHELNUTT, IN THEIR OFFICIAL CAPACITIES AS MEMBERS OF THE BOARD OF TRUSTEES OF THE ARKANSAS STATE POLICE RETIREMENT SYSTEM<br><br>APPELLANTS<br><br>V.<br><br>GLENN SLIGH, MYRON HALL, RICKY BRIGGS, LOYD FRANKLIN, MACK THOMPSON, CLEVE BARFIELD, AND OTHERS SIMILARLY SITUATED<br><br>APPELLEES | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, SEVENTEENTH DIVISION [NO. 60CV-12-344]<br><br>HONORABLE MACKIE PIERCE, JUDGE<br><br><u>REVERSED AND DISMISSED ON DIRECT APPEAL; AFFIRMED ON CROSS-APPEAL; APPELLEES' MOTION TO STRIKE DENIED</u>. |

**COURTNEY HUDSON GOODSON, Associate Justice**

In this class-action case, appellants, the Arkansas State Police Retirement System ("ASPRS") and Kirk Bradshaw, John W. Allison, Brant Tosh, Blake Wilson, Donnie Underwood, Joe Miles, and Dr. John Shelnutt, in their official capacities as members of the Board of Trustees of the Arkansas State Police Retirement System ("the Trustees"), appeal from the Pulaski County Circuit Court's order denying their motion for summary judgment and granting summary judgment to appellees Glenn Sligh, Myron Hall, Ricky Briggs, Loyd Franklin, Mack Thompson, Cleve Barfield, and others similarly situated. For reversal,

appellants argue that (1) the circuit court's denial of their summary-judgment motion should be reversed on the basis that article 5, § 20 of the Arkansas Constitution immunizes ASPRS and its Trustees from suit; (2) the circuit court erred in holding that appellees stated a claim under 42 U.S.C. § 1983 because ASPRS and its Trustees are not "persons" subject to suit; (3) alternatively, even if ASPRS and its Trustees are not immune from suit and are "persons" under § 1983, then appellants are entitled to judgment as a matter of law on appellees' claims; and (4) in the event we affirm the circuit court's ruling on liability, appellees are not entitled to prejudgment interest because their alleged damages were not ascertainable at the time of the event that gave rise to their cause of action. Appellees have also filed a cross-appeal from the circuit court's denial of their request for attorney's fees. We reverse the circuit court's denial of appellants' motion for summary judgment based on sovereign immunity and dismiss appellees' complaint. We affirm appellees' cross-appeal, and we deny appellees' motion to strike portions of appellants' reply brief.

On January 19, 2012, appellees filed a class-action complaint against ASPRS and its Trustees, in their official capacities only, on behalf of certain members of the Arkansas State Police Retirement System Deferred Option Plan ("DROP").[1] An amended complaint was

---

[1] The DROP was established for Arkansas State Police Officers by Act 967 of 1995. *See* Ark. Code Ann. §§ 24-6-301 et seq. (Repl. 2014). It allows officers who are Tier I members of ASPRS with at least thirty years of credited service, and who are otherwise eligible to receive a service retirement pension, to defer the receipt of their retirement benefits while they continue their employment for a maximum duration of seven years. Ark. Code Ann. § 24-6-306. If an officer elects to enter the DROP, the monthly retirement benefits that would have been payable had the officer elected to cease employment are paid into the DROP account, and interest on those benefits is credited to the officer's account. Ark. Code Ann. § 24-6-303 and -304. The employer's contributions to the officer's retirement also continue to be paid during participation in the DROP. Ark. Code Ann. § 24-6-303. When the officer leaves the DROP or is no longer eligible to continue in the

filed on April 20, 2012, and a second amended complaint was filed on June 6, 2013. Appellees alleged that the class, which was composed of Arkansas State Police Officers, had elected to retire into the DROP in reliance on legislation currently in place at the time of their election that had established a minimum rate of return on their DROP retirement accounts. The statutory provision at issue, Arkansas Code Annotated section 24-6-304(b)(1) (Repl. 2000), originally stated that members were to earn interest at a rate of two percentage points below the rate of return of ASPRS's investment portfolio, but no less than the actuarially assumed interest rate as certified by the actuary, which was 7.75% at the time. In Act 1969 of 2005, when the maximum DROP participation period was extended to seven years, the interest rate for the final two years was fixed at the actuarially assumed interest rate. Ark. Code Ann. § 24-6-304(b)(2) (Supp. 2005). However, Act 404 of 2007, which became effective on March 22, 2007, further amended the statute to provide that the ASPRS Board of Trustees shall set the interest rate and that the interest rate "shall not be greater than the actuarially assumed investment rate of return for that time." Ark. Code Ann. § 24-6-304(b)(1) (Supp. 2007). Pursuant to this amendment, the Trustees voted to reduce the interest rate on DROP balances to 3.25% effective July 1, 2009, the start of the 2010 fiscal year.

Appellees alleged that Act 404 of 2007 was unconstitutional as applied to those officers who had elected to enter the DROP prior to March 22, 2007, because it impaired their contractual rights under article 2, § 17 of the Arkansas Constitution and article 1, §10

---

plan, the accumulated DROP balance is payable to the officer in a lump sum or as a monthly annuity. Ark. Code Ann. § 24-6-305.

of the United States Constitution. Appellees also alleged that Act 404 deprived them of a vested property right without due process of law in violation of the Fourteenth Amendment to the United States Constitution and that the Trustees had breached their fiduciary duties to the class by voting to reduce the interest rate. Appellees claimed that the Trustees' actions were arbitrary, capricious, and in violation of the class members' constitutional rights, and they asserted that these violations were actionable pursuant to 42 U.S.C. §§ 1983 and 1988. The complaint sought "legal and equitable" remedies. Specifically, appellees alleged that each class member was either entitled to an equitable remedy by ordering that his or her DROP accounts be corrected or a legal remedy by awarding damages for the money that each member should have received under the law in existence at the time that he or she began participating in the DROP. Alternatively, appellees requested a writ of mandamus or injunctive relief compelling the Trustees to comply with their statutory and fiduciary duties by accurately providing interest on each member's DROP account consistent with the law in effect at the time the member entered the DROP. Appellees also prayed that attorney's fees and costs be awarded.

Appellants filed an answer to the complaint and denied appellees' claims. Appellants also affirmatively asserted that the claims were barred by the doctrine of sovereign immunity, that the complaint failed to state facts upon which relief could be granted, that appellees had failed to exhaust their administrative remedies, and that the claims were barred by the statute of limitations and by laches.[2]

---

[2] Appellants had also filed motions to dismiss appellees' original and amended complaints based on the doctrine of sovereign immunity; however, the motions were denied by the circuit court.

On August 11, 2014, appellees filed a motion for summary judgment, arguing that there were no material facts in dispute and that they were entitled to judgment as a matter of law. Appellees contended that appellants were not entitled to sovereign immunity because (1) the interest payments in the DROP come from the ASPRS trust fund, not from the state general treasury; (2) the State has waived sovereign immunity in the event of errors in retirement calculations pursuant to Arkansas Code Annotated section 24-6-205; and (3) the State has violated appellees' constitutional rights. In support of their motion, appellees attached multiple exhibits, including ASPRS annual reports from 2006 through 2013; deposition excerpts from Gail Stone, the executive director of the Arkansas Public Employees Retirement System ("APERS") and executive secretary of ASPRS, and Richard Weiss, the former director of the Arkansas Department of Finance and Administration ("DFA"); minutes from ASPRS board meetings; and excerpts from the depositions of two Trustees.

On October 6, 2014, appellants filed a response to appellees' motion as well as a cross-motion for summary judgment. Appellants agreed that there remained no genuine issues of material fact in dispute but argued that appellees' claims against them were barred by sovereign immunity and that appellees had also failed to state a claim pursuant to 42 U.S.C. § 1983 because ASPRS and its Trustees are not "persons" amenable to suit. Regarding appellees' argument that appellants violated the contract clause in the state and federal constitutions by reducing the interest rate, appellants asserted that this claim did not apply to them because they were not responsible for the change in state law, and even if it did apply, the claim was barred by the statute of limitations. Appellants also contended that

5

appellees could not establish a constitutionally protected contractual right or property interest in a certain amount of interest on the DROP funds, which are composed solely of the employer's contributions. In addition, appellants argued that the Trustees' vote to reduce the interest rate pursuant to the express statutory authority of Act 404 of 2007 was not a mistake or error contemplated under Arkansas Code Annotated section 24-6-205 and that the Trustees did not violate any fiduciary duty by taking an action that was authorized under the statute. In support of their cross-motion, appellants attached the affidavits of Weiss, Stone, and Trustee Blake Wilson, in addition to deposition excerpts from Weiss and Stone.

Following a response to the cross-motion filed by appellees and a reply filed by appellants, the circuit court entered an order on May 27, 2015, granting appellees' motion for summary judgment on all claims and denying appellants' cross-motion. With respect to sovereign immunity, the circuit court specifically found that "the interest money they seek is not a general financial obligation that would cause the legislature to appropriate funds from the state Treasury. All funds at issue are derived from member contributions and belong to the officers, not to the State." The circuit court further stated that "retroactive application of Act 404 of 2007 would impair and disturb contractual vested rights of the officers regarding the interest rate on their DROP contributions."

Appellees then filed a motion for summary judgment on the issue of damages, requesting that the circuit court order that each of the fifty-one class members should be paid the difference between "the erroneous distribution" and what they should have received based on the interest rates set out in the statute prior to the 2007 amendment.

Appellees also argued that they were entitled to costs, attorney's fees, and prejudgment interest. Attached to appellees' motion were exhibits setting forth the amounts allegedly owed to each class member. Appellees subsequently amended their motion to correct certain errors contained in these exhibits.

There were two hearings on appellees' motion for summary judgment on damages, and the circuit court entered an order on December 23, 2015, granting summary judgment to appellees. The court awarded damages to each class member consistent with the exhibits that had been provided and eventually agreed upon by the parties. The court also found that appellees were entitled to prejudgment interest at the rate of 6% per annum from the date of each officer's final DROP payment through December 10, 2015.[3] However, the court denied appellees' request for attorney's fees, finding that this claim was barred by sovereign immunity. Appellants filed a timely notice of appeal from the circuit court's orders granting summary judgment to appellees on both liability and damages, and appellees cross-appealed from the denial of attorney's fees.

In their first point on appeal, appellants argue that the circuit court erred by denying their motion for summary judgment and granting summary judgment to appellees because both ASPRS and its Trustees were immune from suit pursuant to article 5, § 20 of the Arkansas Constitution. Appellants contend that there were no applicable exceptions to the doctrine of sovereign immunity under the circumstances in this case.

---

[3] All fifty-one class members had exited the DROP by the time the circuit court's order was entered, and including prejudgment interest, the total amount of damages amounted to $2,521,245.73.

SLIP OPINION

Ordinarily, on appeal from a summary-judgment disposition, we view the evidence in the light most favorable to the party resisting the motion, and any doubts and inferences are resolved against the moving party. *Abraham v. Beck*, 2015 Ark. 80, 456 S.W.3d 744. However, where the parties agree on the facts, we simply determine whether the appellees were entitled to judgment as a matter of law. *Id.* When parties file cross-motions for summary judgment, as in this case, they essentially agree that there are no material facts remaining and that summary judgment is an appropriate means of resolving the case. *Id.* As to issues of law presented, our review is de novo. *Id.*

Sovereign immunity is jurisdictional immunity from suit. *Kelley v. Johnson*, 2016 Ark. 266, 496 S.W.3d 346. This defense arises from article 5, § 20 of our state constitution, which provides that "[t]he State of Arkansas shall never be made a defendant in any of her courts." We have extended the doctrine to include state agencies, and we have also held that a suit against the board of trustees of a state university is a suit against the State. *Bd. of Trs. of Univ. of Ark. v. Burcham*, 2014 Ark. 61. In determining whether the doctrine of sovereign immunity applies, this court must decide whether a judgment for the plaintiff will operate to control the action of the State or subject it to liability. *Kelley, supra.* If so, the suit is one against the State and is barred unless an exception to sovereign immunity applies. *Id.*; *Burcham, supra.*

We have recognized three ways in which a claim of sovereign immunity may be surmounted: (1) where the State is the moving party seeking specific relief; (2) where an act of the legislature has created a specific waiver of sovereign immunity; and (3) where the state agency is acting illegally, unconstitutionally, or a state-agency officer refuses to do a

purely ministerial action required by statute. *Kelley*, *supra*. Furthermore, a state agency may be enjoined if it can be shown that a pending action of the agency is ultra vires or without authority of the agency, or the agency is about to act in bad faith, arbitrarily, capriciously, and in a wantonly injurious manner. *Burcham*, *supra*; *Ark. Tech Univ. v. Link*, 341 Ark. 495, 17 S.W.3d 809 (2000).

In this case, appellees do not dispute that ASPRS and its Trustees are agencies or arms of the State. In fact, in their second amended complaint, appellees alleged that ASPRS was created by legislation enacted in Arkansas Code Annotated section 24-6-201 et seq., that it is a pension fund of the State of Arkansas, and that it is funded through contributions from the State and investment income. Appellees also alleged that the Trustees are responsible for managing ASPRS and that they were being sued in their official capacities. A suit against a state official in his or her official capacity is not a suit against that person but is a suit against that official's office, and thus, the State. *Link*, *supra*. Furthermore, in *Weiss v. McLemore*, 371 Ark. 538, 268 S.W.3d 97 (2007), which also involved ASPRS and its Trustees, as well as other state officials, we referred to the defendants as "the State" and held that they were not entitled to sovereign immunity only because the legislature had created a waiver of immunity under the circumstances in that case. It is therefore clear that appellants are entitled to sovereign immunity unless there is an applicable exception.

The circuit court in this case found, however, that appellants were not entitled to sovereign immunity because the interest that appellees sought was not a general financial obligation of the State that would require an appropriation of funds from the state treasury. Instead, the court indicated that the funds at issue were derived from member contributions

and belonged to the officers, not to the State. The court erred in denying appellants' claim of sovereign immunity on this basis.

ASPRS is non-contributory with respect to appellees, meaning that the officers are not required to contribute any portion of their pay toward their retirement. *See* Ark. Code Ann. § 24-6-225 (Repl. 2014). Instead, the employer makes contributions on behalf of each of the officers, and these contributions are appropriated to ASPRS by the State, as with any state agency. When an officer enters the DROP, the retirement benefits he or she would otherwise receive each month instead remain part of the trust fund and earn interest that is eventually paid to the officer upon exiting the DROP. While the officers' retirement benefits, including DROP funds, are held in a trust fund that is earmarked for those specific purposes, Gail Stone, the executive secretary of ASPRS, and Richard Weiss, the former director of DFA, both stated in their affidavits and depositions that these funds are still part of the general treasury until they are actually received by the beneficiary. Weiss specifically stated that ASPRS is a state agency and that "all funds held by the System, including DROP funds, are state funds." This testimony is supported by Arkansas Code Annotated section 24-6-206(a)(1) (Repl. 2014), which provides that "[t]here is established on the books of the Treasurer of State, Auditor of State, and Chief Fiscal Officer of the State a fund to be known as the 'State Police Retirement Fund,' which shall consist of the trust funds designated by law."

Stone explained that state revenue, whether from "statutory contributions or revenues from insurance premium tax, title fees, court fees, and special appropriations when there is just not enough money, ultimately end[s] up in the State Police Retirement System

for the benefit of the members and beneficiaries." Although each DROP participant may be able to view his or her individual DROP reserve account online, Stone indicated that each member's funds are not actually segregated into individual accounts. To the extent that appellees argue that the funds at issue are not part of the state treasury and do not subject the State to liability because they have already been appropriated for ASPRS and cannot be invaded by the State for general-revenue purposes, this same principle would apply to any state agency as Weiss noted in his affidavit.

In *Short v. Westark Community College*, 347 Ark. 497, 65 S.W.3d 440 (2002), we rejected the appellant's argument that the college was not immune from suit because it received money not only from the state treasury but also from tuition, tax levies, and private grants. We noted that the State, by law, would be required to make up the difference and that any money pulled from the college's operating funds would have to be replaced with State money to cure the shortfall. *Id.* Here, as Stone indicated in her affidavit, ASPRS faced the possibility of an asset shortfall in 2009 due to the accelerating growth of pension liabilities, and the General Assembly therefore had to authorize an infusion of $9 million into the system. Thus, appellees are incorrect that their suit does not implicate the state treasury, and we hold that the circuit court erred in finding that appellants were not immune for this reason.

In their motion for summary judgment, appellees also contended that there were two exceptions to sovereign immunity that applied to this case. Appellees argued, and the circuit court agreed, that in lowering the interest rate after the class members had already entered the DROP, appellants violated appellees' contractual rights under both the Arkansas and the

United States Constitutions and violated their due-process rights as guaranteed by the Fourteenth Amendment to the U.S. Constitution. Appellees further claimed that appellants' actions were arbitrary and capricious and that the Trustees had breached their fiduciary duty to the class. Based on these allegations, appellees contended that the exception for illegal or unconstitutional acts applied to bar appellants' claim of sovereign immunity.

As appellants argue, however, this exception extends only to injunctive relief, and it does not apply to suits seeking money damages. *Burcham*, *supra*; *Ark. Lottery Comm'n v. Alpha Mktg.*, 2013 Ark. 232, 428 S.W.3d 415; *Link*, *supra*. We have never recognized this exception to allow a claim for damages to proceed against the State. *Burcham*, *supra*; *Alpha Mktg.*, *supra*. Although appellees indicated in their complaint that they were seeking both "legal and equitable" remedies, the nature of the relief sought was clearly for monetary damages, as even the writ of mandamus and the injunction were requested solely to compel the Trustees to pay the interest on each member's account consistent with the statute in effect at the time the member became a DROP participant. By the time the circuit court entered its summary-judgment orders in 2015, all the class members had ended their participation in the DROP, and the relief awarded by the circuit court amounted only to damages to be paid to each member. Accordingly, even assuming that appellees sufficiently stated claims against appellants based on constitutional violations or arbitrary or capricious conduct, this exception to sovereign immunity does not apply. While appellees cite *Jones v. Cheney*, 253 Ark. 926, 489 S.W.2d 785 (1973), and *Pyle v. Webb*, 253 Ark. 940, 489 S.W.2d 796 (1973), in support of their impairment-of-a-contract claim, neither of these

cases discussed the issue of sovereign immunity, and they are therefore not relevant to this case.

Appellees also contend that appellants were not entitled to sovereign immunity because the General Assembly waived immunity for the State by enacting Arkansas Code Annotated section 24-6-205:

> (a) Should any change or error in the records of the State Police Retirement System or the Department of Arkansas State Police result in any person's receiving from the system more or less than he or she would have been entitled to receive had the records been correct, the Board of Trustees of the State Police Retirement System shall correct the error and, as far as is practicable, shall adjust the payment in such manner that the actuarial equivalent of the benefit to which the person was correctly entitled shall be paid.
> (b) The board shall have the right to recover any overpayment any person may have received from funds of the system.

As appellees argue, in *Weiss*, *supra*, this court held that it could be inferred from the language in this statute that the legislature intended to waive the State's sovereign immunity so that an underpaid retiree could sue to have his or her underpayment corrected.

In *Weiss*, however, the appellee claimed that the appellants had erred by not including certain compensation received by state police officers for uniforms and travel when calculating each officer's contributions to ASPRS during the years 1992−2003. Thus, *Weiss* involved an alleged error on the State's part in calculating the officer's retirement benefits. Here, the State intentionally amended the statute regarding the interest paid on DROP accounts, and the Trustees deliberately voted to reduce the interest rate pursuant to that statute. There was thus no error in the records as contemplated in section 24-6-205, and this section does not waive appellants' immunity with respect to appellees' suit. Furthermore, as appellants note, the legislature added Arkansas Code Annotated section 24-

6-103 in 2011, after *Weiss* was handed down, and this provision expressly states that "[n]othing in this chapter shall be taken or interpreted as a waiver of the State's sovereign immunity."

In conclusion, there are no exceptions that apply to this case that prevent appellants from claiming sovereign immunity from appellees' suit. Thus, the circuit court's orders of summary judgment must be reversed, and appellees' complaint must be dismissed. Because we reverse based on appellants' first point on appeal and dismiss appellees' complaint, there is no need to address the remaining points on appeal raised by appellants.

In their cross-appeal, appellees argue that the circuit court erred by denying their request for attorney's fees. However, for the reasons discussed above, the circuit court was correct in finding that this claim was barred by sovereign immunity, and we therefore affirm on the cross-appeal.

Appellees also filed a motion to strike certain portions of appellants' reply brief, or alternatively, to allow additional briefing. We denied their request for additional briefing but passed the motion to strike until submission of the case. Appellees argue in their motion that appellants have raised new arguments and cited new authority in their reply brief. As appellants assert, however, they were only responding to the arguments made in appellees' brief. Appellees have failed to identify any new arguments made by appellants in the reply brief, and we therefore deny appellees' motion to strike.

Reversed and dismissed on direct appeal; affirmed on cross-appeal; appellees' motion to strike denied.

*Leslie Rutledge*, Att'y Gen., by: *Patricia Van Ausdall Bell*, Ass't Att'y Gen., for appellants.

*C. Burt Newell*, for appellees.