Cite as 2020 Ark. 362

# SUPREME COURT OF ARKANSAS

No. CV-19-929

|  |  |
|---|---|
|  | **Opinion Delivered:** November 5, 2020 |
| JENNIFER JONES, IN HER OFFICIAL CAPACITY AS CLERK OF THE DISTRICT COURT OF BENTON COUNTY, ARKANSAS, BENTONVILLE DIVISION | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, SECOND DIVISION |
| APPELLANT | [NO. 60CV-18-5146] |
| V. | HONORABLE CHRISTOPHER CHARLES PIAZZA, JUDGE |
| PROFESSIONAL BACKGROUND SCREENING ASSOCIATION, INC. |  |
| APPELLEE | AFFIRMED ON DIRECT APPEAL; AFFIRMED ON CROSS-APPEAL. |

**COURTNEY RAE HUDSON, Associate Justice**

Appellant Jennifer Jones, in her official capacity as Clerk of the District Court of

Benton County, Arkansas, Bentonville Division ("Jones"), appeals from the Pulaski County

Circuit Court's order granting summary judgment to appellee Professional Background

Screening Association, Inc. ("PBSA"), on PBSA's claim pursuant to the Arkansas Freedom

of Information Act ("FOIA"). For reversal, Jones argues that the circuit court erred in

granting partial summary judgment in favor of PBSA on its FOIA claim based upon its

erroneous interpretation of Arkansas Supreme Court Administrative Order Number 19

("Order 19"). PBSA also filed a cross-appeal from the circuit court's partial grant of summary

judgment to Jones on PBSA's claim for relief under 42 U.S.C. § 1983. We affirm on both direct appeal and cross-appeal.

PBSA, f/k/a National Association of Professional Background Screeners, is a nonprofit trade association that represents the interests of companies offering employment, tenant, and volunteer background screening services. On July 23, 2018, PBSA filed a complaint against Jones alleging (1) that Jones had interpreted and applied Order 19 to PBSA members who request court records to perform background checks in a manner that violated their right to access court records under the First Amendment to the United States Constitution, as applied to the states through the Fourteenth Amendment, and other federal law and (2) that its members' requests for court records are instead governed by the Arkansas Freedom of Information Act, Arkansas Code Annotated sections 25-19-101 et seq. PBSA requested declaratory and injunctive relief, as well as costs and attorney's fees.

According to the facts alleged in the complaint, an Arkansas PBSA member was informed beginning in February 2018 that Order 19, not FOIA, governed its requests for court records to be used for criminal-background checks. PBSA stated that Jones had reiterated this position as recently as July 10, 2018, and it attached as an exhibit an FOIA request by Courthouse Concepts for "any and all court records which relate to" a certain individual. A response letter from Jones was also attached wherein she indicated that Order 19 applied to the request and attached a "Compiled Records License Agreement, Request for Compiled Information Affidavit, and a Request for Compilation of Court Information."

2

PBSA claimed that its requests for court records, such as docket sheets, do not fall within Order 19's definition of "compiled information," which is "information that is derived from the selection, aggregation or reformulation of information from more than one court record." Further, PBSA alleged that its members are unable to meet the certification required by Order 19's provisions on compiled information that they "must declare under penalty of perjury that the request is made for a scholarly, journalistic, political, governmental, research, evaluation, or statistical purpose, and that the identification of specific individuals is essential to the purpose of the inquiry." In addition, PBSA asserted that the license agreement would preclude them from providing personal identifying information to customers, subscribers, or other persons without express permission. PBSA stated that, out of the dozens of Arkansas district courts, the Bentonville Division is one of only three that continue to deny its members access to court records to perform criminal-background checks "based on a misinterpretation of Order 19."

Jones filed a motion to dismiss the complaint pursuant to Arkansas Rule of Civil Procedure 12(b)(1) and 12(b)(6), claiming that PBSA had failed to state any facts upon which relief could be granted and that its federal § 1983 claim was barred by sovereign immunity. Jones further argued that PBSA lacked standing to bring the action and that its claims were not ripe. In its response, PBSA asserted that Jones was not entitled to sovereign immunity because it sought only prospective relief from her unconstitutional and *ultra vires* actions. Furthermore, PBSA contended that it had standing to bring its action on behalf of its members based on the doctrine of associational standing.

3

The circuit court held a hearing on Jones's motion to dismiss on January 8, 2019. Jones reiterated her sovereign-immunity argument with respect to the § 1983 claims and conceded that she was objecting to the FOIA claim only on the basis of standing, not immunity. The circuit court entered an order that same day denying the motion to dismiss.

Jones filed an answer to PBSA's complaint on January 22, 2019. She denied the allegations in the complaint and affirmatively asserted that the complaint was barred by sovereign, statutory, and/or qualified immunity; that in her official capacity, she was not a "person" amenable to suit under 42 U.S.C. § 1983; that she acted in good faith at all times relevant to the material facts in the case; that her interpretation of Order 19 was reasonable and consistent with Arkansas law, including the FOIA; and that even if she misinterpreted Order 19, her position was substantially justified.

On May 3, 2019, PBSA filed a motion for summary judgment, arguing that there were no genuine issues of material fact and that it was entitled to judgment as a matter of law. It contended that the requests for court records made by its members such as Courthouse Concepts were not requests for compiled information as defined in Order 19; that Jones's refusal to provide these records violated the FOIA, the First Amendment to the United States Constitution, and federal common law; that Jones's refusals were resulting in significant injury to its members for which there was no adequate remedy at law; and that it was entitled to declaratory and injunctive relief. PBSA attached as exhibits this court's per curiam opinion adopting Order 19; Jones's deposition; and the affidavits of Melissa

4

Sorenson, who is the executive director of PBSA, and Paul Hickman, the president of Courthouse Concepts, Inc.

In support of its motion, PBSA cited the following testimony from Jones's deposition. The Bentonville Division of the Benton County District Court retains records on two separate computer systems: JustWare and PTS. The JustWare system contains records on all new charges from May 2013 onward and is available to the public through a website called JusticeWeb. The PTS system, which includes all records on cases opened prior to May 2013, is not publicly accessible. PBSA indicated that only the PTS records are at issue in this suit. When Courthouse Concepts requests records on a particular person, the court clerk first must determine if that individual has any records in the PTS system by typing in his or her name and birthdate. Jones stated that it takes only seconds to perform this step. Next, if the person does have records in the system, the clerk must identify and print those records. During her deposition, Jones presented an exhibit with screenshots of the actions that are required for this second step. She indicated that the time required for this search varies but that it is "less than ten minutes."

Paul Hickman stated in his affidavit that Courthouse Concepts is a for-profit corporation that is organized under the laws of the State of Arkansas and has its principal place of business in Arkansas. He indicated that the company is a member of PBSA and that it provides background-screening services to its clients. Hickman stated that before February 21, 2018, Courthouse Concepts would request court records from the Bentonville Division by emailing a list of names and birthdates. If any cases were responsive to its request, the

court clerk would provide Courthouse Concepts with either the summaries of the docket sheets from those cases or the charging instrument and records reflecting the disposition of each charge. Following a February 12, 2018 records request, Courthouse Concepts was informed by Jones that its requests fell under Order 19's section on "Bulk Records." Jones continued to refuse to provide the records despite further communication. In July 2018, Hickman stated that Courthouse Concepts made another request for records under the FOIA, seeking "all court records" related to a certain individual. Jones again denied the request, citing to Order 19 and attaching a new "Compiled Records Licensing Agreement" specific to the Bentonville Division. According to Hickman, Courthouse Concepts cannot run complete and thorough criminal-background checks due to Jones's refusal, and Courthouse Concepts is unable to obtain the information from other sources, such as the Arkansas State Police, because the state police provides no information on pending misdemeanor charges; arrests resulting in dismissal of the charges, acquittal, or nolle prosequi; or traffic records.

On June 11, 2019, Jones filed a response to PBSA's motion as well as a cross-motion for summary judgment. Jones agreed that there were no genuine issues of material fact in dispute but argued that PBSA's claims failed as a matter of law. In her affidavit attached to the motion, she described a multistep process that employees of the Bentonville District Court must complete in order to select and print records responsive to background-check requests by Courthouse Concepts and similar entities. Jones indicated that it was not uncommon for her and her staff to work overtime hours to fulfill these background requests.

6

After Courthouse Concepts requested records for approximately 840 people in one five-day period in February 2018, Jones stated that she consulted with a staff attorney for the Administrative Office of the Courts and notified the company that its requests technically fell under Order 19. Jones indicated that Courthouse Concepts never completed a compiled-records request and instead filed suit after its FOIA request was refused.

Jones argued that PBSA's Order 19 claims for declaratory and injunctive relief were unripe and should be dismissed for lack of standing because neither PBSA nor any of its members had submitted a formal request for compiled information. In addition, she asserted that Order 19 does not violate either the First Amendment or federal common law because even if there is a cognizable right to access docket reports, it is not absolute, and the administrative burdens imposed by Order 19 are minimal when compared to the compelling public interests it serves. With regard to PBSA's FOIA claims, Jones contended that it lacked standing to assert these claims on its own behalf because it was not an Arkansas citizen and that "the only members who would have standing to raise claims under the FOIA are Arkansas citizens such as Courthouse Concepts." Thus, Jones asserted that the circuit court should grant judgment in her favor as a matter of law on all other FOIA claims raised in the complaint. She further contended that Order 19's compiled-records requirements applied to Courthouse Concepts' background-check requests and that judgment should be granted in her favor on this claim as well. Finally, Jones argued that even if the circuit court were to grant relief to PBSA on its claims, it was not entitled to a permanent injunction or to attorney's fees and costs.

In its response to Jones's cross-motion for summary judgment, PBSA summarized the dispute between the parties as two issues, both of which it contended were justiciable controversies: (1) whether Order 19 was applicable to Courthouse Concepts' July 2018 request and (2) whether PBSA members are incapable of complying with the procedures set out in Order 19 and are therefore being deprived of their statutory, common law, and constitutional rights to access court records. PBSA argued that Jones's interpretation of "compiled information" was "shockingly broad" and would encompass even a person's request for a specific type of document, such as a judgment, from three separate cases. PBSA instead claimed that for a record request to be considered one for compiled information, it must be for information that has been reformulated or aggregated and must involve the creation of a new court record. PBSA also contended that much of the complexity of the process by which the Bentonville Division purportedly obtained the records appeared to be voluntary. For example, Jones stated in her affidavit that she knew from her course of dealing with Courthouse Concepts that they wanted only copies of docket reports for guilty dispositions. However, PBSA argued that none of Courthouse Concepts' requests attached to Jones's affidavit included that limitation and that the July 2018 request specifically asked for "all court records." PBSA further noted that, according to Hickman, 80%–90% of requests turn up no records on the individual, and the entire process takes merely seconds to complete in that event. Thus, PBSA contended that its members' requests for court records related to specific individuals were not requests for compiled information pursuant to Order 19 and that the requests were subject to the FOIA. PBSA continued to argue that

if Jones's interpretation was correct and the court records were subject to Order 19, then this application of Order 19 violated its members rights under the First Amendment and federal common law.

Following a reply and a supplemental affidavit filed by Jones wherein she challenged many of the assertions made in PBSA's response, the circuit court held a hearing on the cross-motions for summary judgment on August 6, 2019. The court then entered an order on August 14 granting in part and denying in part PBSA's motion for summary judgment and granting in part and denying in part Jones's cross-motion. The circuit court declared that the July 10, 2018 request for court records by Courthouse Concepts was not a request for compiled information within the meaning of Order 19 and that Order 19 provided no basis for Jones to refuse to respond to that request. The court instead found that the July 2018 request was a valid FOIA request and that Jones had violated the FOIA by failing to respond. The circuit court ordered Jones to respond to the request. However, the court concluded that PBSA was not entitled to attorney's fees because Jones had "an antiquated computer system and was acting on advice" in denying the request; therefore, her position was substantially justified. The circuit court further found that because the "FOIA issue drives this case, the Court hereby grants Ms. Jones's motion for summary judgment on Plaintiff's claims alleging that Administrative Order 19, as applied by Ms. Jones, violates [PBSA] members' right to access court records under the First Amendment and/or federal common law." Finally, the court declined to issue an injunction against Jones regarding any future requests from PBSA members. Jones filed a timely notice of appeal from the circuit

9

court's order denying in part her motion for summary judgment, and PBSA cross-appealed from the court's partial denial of its motion.

On direct appeal, Jones argues that the circuit court erred in granting partial summary judgment in favor of PBSA on its FOIA claim. Ordinarily, on appeal from a summary-judgment order, we view the evidence in the light most favorable to the party resisting the motion, and any doubts and inferences are resolved against the moving party. *Ark. State Police Ret. Sys. v. Sligh*, 2017 Ark. 109, 516 S.W.3d 241. However, when the parties agree on the facts, we simply determine whether the appellee was entitled to judgment as a matter of law. *Id.* When parties file cross-motions for summary judgment, as they did in this case, they essentially agree that there are no material facts remaining and that summary judgment is an appropriate means of resolving the case. *Mississippi Cnty. v. City of Blytheville*, 2018 Ark. 50, 538 S.W.3d 822. As to issues of law presented, our review is de novo. *Id.*

Jones raises two threshold issues that must be addressed before we turn to the merits of her appeal. First, she claims in passing that "PBSA's request for retrospective declaratory and injunctive relief regarding the July 2018 request is barred by sovereign immunity." As noted earlier, Jones filed a motion to dismiss that raised sovereign immunity with respect to the § 1983 claims only, and she conceded at the hearing that she was not asserting this defense with respect to the FOIA claim. The motion to dismiss was denied by the circuit court. She now raises the issue of sovereign immunity in one sentence in her brief without analysis or further explanation as to how this doctrine applies to the claim at issue on appeal. As PBSA asserts, we will not consider an issue that is not appropriately developed or

supported by convincing argument. *Hendrix v. Black*, 373 Ark. 266, 283 S.W.3d 590 (2008). If the appellant's point is not apparent without further research, we simply will not address it. *Id.*

The second threshold issue raised by Jones is that of standing. In a one-sentence argument, she contends that PBSA lacked standing to appeal the denial of Courthouse Concepts' request because "PBSA is not an Arkansas citizen and has never submitted a FOIA request to the Bentonville District Court." We decline to address the merits of this undeveloped argument for the same reasons discussed above. *Hendrix, supra*.

We now proceed to the merits of Jones's argument on direct appeal, which is that the circuit court erred in granting partial summary judgment in favor of PBSA on its FOIA claim and by finding that PBSA's July 2018 request for court records was not one for compiled information as defined in Order 19. This case presents an issue of first impression regarding the interplay between Order 19 and the FOIA.

Because administrative orders are, in essence, rules promulgated by the court, they are to be interpreted using the same canons of construction that are used to interpret statutes. *Ark. Office of Child Support Enforcement v. Hearst*, 2009 Ark. 599, 357 S.W.3d 450. The first rule in considering the meaning and effect of a statute is to construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language. *Tollett v. Wilson*, 2020 Ark. 326, ___ S.W.3d ___. When the statutory language is plain and unambiguous, there is no need to resort to rules of statutory construction, and the analysis need go no further. *Id.*

Order 19 was adopted by this court in 2007 for the purpose of developing a policy on access to court records that balances the public's right to know with the need to protect individual privacy from threats such as identify theft. *See In re Adoption of Admin. Order No.19––Access to Court Records*, 369 Ark. App'x 525 (2007) (per curiam). Section (I), which recites its authority, scope, and purpose, provides:

A. Pursuant to Ark. Const. Amend. 80 §§ 1, 3, 4; Ark. Code Ann. §§ 16-10-101 (Repl. 1999), 25-19-105(b)(8) (Supp. 2003), and this Court's inherent rule-making authority, the Court adopts and publishes Administrative Order Number 19: Access to Court Records. *This order governs access to, and confidentiality of, court records. Except as otherwise provided by this order, access to court records shall be governed by the Arkansas Freedom of Information Act (Ark. Code Ann. §§ 25-19-101 et seq.).*

B. The purposes of this order are to:
(1) promote accessibility to court records;
(2) support the role of the judiciary;
(3) promote governmental accountability;
(4) contribute to public safety;
(5) reduce the risk of injury to individuals;
(6) protect individual privacy rights and interests;
(7) protect proprietary business information;
(8) minimize reluctance to use the court system;
(9) encourage the most effective use of court and clerk-of-court staff;
(10) provide excellent customer service; and
(11) avoid unduly burdening the ongoing business of the judiciary.

C. This order applies only to court records as defined in this order and does not authorize or prohibit access to information gathered, maintained, or stored by a non-judicial governmental agency or other entity.

D. Disputes arising under this order shall be determined in accordance with this order and, to the extent not inconsistent with this order, by all other rules and orders adopted by this Court.

E. This order applies to all court records; however, clerks and courts may, but are not required to, redact or restrict information that was otherwise public in case records and administrative records created before January 1, 2009. However, confidential

information shall be redacted from pre-January 1, 2009 case records and administrative records before remote access is available to such records.

Ark. Sup. Ct. Admin. Order No. 19 (I) (2019) (emphasis added). Section (II)(A) provides that "[a]ll persons have access to court records as provided in this order." Section (III) defines terms used throughout Order 19. The definitions pertinent to this case are set out below:

(1) "Court Record" means both case records and administrative records, but does not include information gathered, maintained or stored by a non-court agency or other entity even though the court may have access to the information, unless it is adopted by the court as part of the court record.

(2) "Case Record" means any document, information, data, or other item created, collected, received, or maintained by a court, court agency or clerk of court in connection with a judicial proceeding.

. . . .
(6) "Public access" means that any person may inspect and obtain a copy of the information.

. . . .

(9) "Bulk Distribution" means the distribution of all, or a significant subset of, the information in court records, as is, and without modification or compilation.

(10) "Compiled Information" means information that is derived from the selection, aggregation or reformulation of information from more than one court record.

*Id.* § (III)(A).

Section (IV) states that public access shall be granted to court records "subject to the limitations of sections V through X of this order" and that the order "applies to all court records, regardless of the manner of creation, method of collection, form of storage, or the form in which the records are maintained." Section (VI) contains numerous requirements related to bulk distribution and compiled information and requires that requests for such

information be made in writing and identify the requested information and the desired format of the compilation. *Id.* § (VI)(A) & (B). The requestor may also be required to pay the actual costs of reproduction, including personnel time exceeding one hour. *Id.* § (VI)(B)(2). Further, when the request involves the identification of specific individuals, the request "must include an executed copy of the Compiled Records License Agreement and the requester must declare under penalty of perjury that the request is made for a scholarly, journalistic, political, governmental, research, evaluation, or statistical purpose, and that the identification of specific individuals is essential to the purpose of the inquiry." *Id.* § (VI)(B)(5).

In our per curiam order adopting Order 19, we explained the differences between compiled information and other types of requests:

> Section III(A)(10) recognizes that compiled information is different from case-by-case access because it involves information from more than one case. *Compiled information is different from bulk access in that it involves only some of the information from some cases and the information has been reformulated or aggregated; it is not just a copy of all the information in the court's records. Compiled information involves the creation of a new court record.* In order to provide compiled information, a court generally must write a computer program to select the specific cases or information sought in the request, or otherwise use court resources to identify, gather, and copy the information.
>
> Generating compiled data may require court resources and generating the compiled information may compete with the normal operations of the court for resources, which may be a reason for the court not to compile the information. It may be less costly for the court and less of an impact on the court to, instead, provide bulk distribution of the requested information, and let the requestor, rather than the court, compile the information.

*In re Adoption of Admin. Order No. 19*, 369 Ark. App'x at 544 (emphasis added).

Jones continues to argue, as she did below, that Courthouse Concepts' request for "all court records" related to a specific individual was a request for compiled information under Order 19. She contends that such background requests involve information from more than one case, and she points to the multistep process that she and other staff must go through in order to identify and print the docket reports for each individual for whom a background check is requested. Jones asserts that this procedure uses court resources to identify, gather, and copy the information, as described in our comments to Order 19.

PBSA responds that Jones's interpretation of the term "compiled information" is so broad that it would encompass the vast majority of requests for court records from any source and for any purpose. We agree. While Jones cites certain language in our commentary to Order 19, section (III), she ignores the other provisions explaining that a compiled-information request involves "some" information from "some cases" and that it requires a reformulation or aggregation of the information and "the creation of a new court record." The process described by Jones that is needed to identify and copy all existing court records relating to a specific person may be tedious and require multiple steps; however, this is not akin to selecting certain information from multiple cases and then aggregating or reformulating that information into a new court record. The fact that the Bentonville Division uses what the circuit court referred to as an "antiquated" computer system does not change the nature of the information requested or transform existing court records into

"compiled information."[1] While Jones relies on an Attorney General Opinion indicating that requests for background checks are governed by the compiled-information provisions of Order 19, these opinions are not binding precedent on this court. *See Op.* Ark. Att'y Gen. No. 121 (2016); *Ark. Prof'l Bail Bondsman Licensing Bd. v. Oudin*, 348 Ark. 48, 69 S.W.3d 855 (2002).

A plain reading of Order 19 and its commentary support PBSA's position that the July 2018 request by Courthouse Concepts was not one for compiled information. Accordingly, the July 2018 request was not governed by any of the access limitations described in Order 19, and the circuit court was correct in determining that the FOIA applied to the request. *See* Admin. Order No. 19, § (I)(A) (stating that "except as otherwise provided by this order, access to court records shall be governed by the Arkansas Freedom of Information Act").

We liberally construe the FOIA to accomplish its "broad and laudable purpose that public business be performed in an open and public manner." *City of Fort Smith v. Wade*,

---

[1]We note that there are other methods by which the Bentonville District Court can provide access to these court records, such as participating in the publicly accessible CourtConnect website maintained by our Administrative Office of the Courts or allowing remote access to the district court's computer system––either method may be a more efficient use of court resources. In fact, Order 19, section (V) states that courts "should endeavor to make at least the following information, when available in electronic form, remotely accessible to the public: (1) litigant/party/attorney indexes to cases filed with the court; (2) listings of case filings, including the names of the parties; (3) the register of actions or docket sheets; (4) calendars or dockets of court proceedings, including case numbers and captions, date and time of hearings, and location of hearings; (5) judgments, orders, or decrees." Thus, we have emphasized in Order 19 that courts have a duty to maximize their resources in order to achieve the goal of easily accessible court records.

2019 Ark. 222, at 7, 578 S.W.3d 276, 280. Jones does not dispute that the court records requested in this case are "public records" as defined by the FOIA. *See* Arkansas Code Annotated section 25-19-103(7) (Supp. 2019). While a custodian is not required to "compile information or create a record" in response to a FOIA request under section 25-19-105(d), this exemption does not apply here for the reasons discussed above. We therefore affirm the circuit court's award of summary judgment to PBSA on its FOIA claim.

On cross-appeal, PBSA challenges the circuit court's grant of partial summary judgment in favor of Jones on its claims for relief under 42 U.S.C. § 1983. PBSA first contends that "if the circuit court intended to pretermit analysis of issues regarding the First Amendment and the common law right of access because it concluded the relief it awarded under FOIA was complete, it should have dismissed those claims instead of awarding summary judgment to Jones." Thus, PBSA asserts that if we agree with the circuit court's decision on direct appeal, then we should reverse and dismiss the § 1983 claims as moot on cross-appeal.

As Jones responds, however, PBSA failed to raise this issue with the circuit court when the parties were discussing the proposed order at the conclusion of the hearing, despite having the opportunity to do so. It is well settled that we will not address arguments raised for the first time on appeal. *Worden v. Kirchner*, 2013 Ark. 509, 431 S.W.3d 243.

The circuit court did not explain the basis for its decision to grant partial summary judgment to Jones on the § 1983 claims. Thus, its ruling encompasses the issues presented by the briefs and arguments of the parties. *Quarles v. Courtyard Gardens Health & Rehab.*, 2016

Ark. 112, 488 S.W.3d 513. Jones argued below that PBSA's § 1983 claims were not ripe for review because no formal request for compiled information under Order 19 had been made by either PBSA or Courthouse Concepts. Because the circuit court agreed with PBSA that Order 19 did not govern the court-records request at issue, the court was correct in determining that the § 1983 claims were not ripe for review and in granting partial summary judgment to Jones on those claims. *See Hardin v. Bishop*, 2013 Ark. 395, 430 S.W.3d 49. Accordingly, on this basis, we affirm the circuit court's order on cross-appeal.

Affirmed on direct appeal; affirmed on cross-appeal.

WOOD, J., concurs.

KEMP, C.J., concurs on direct appeal and dissents on cross-appeal.

HART and WOMACK, JJ., join on direct appeal and dissent on cross-appeal.

**RHONDA K. WOOD, Justice, concurring.** Although I agree Jones should turn the records over, I disagree with the majority's conclusion that this request fell under FOIA rather than Administrative Order 19.[1] I depart from the majority's reasoning because Courthouse Concepts' request was for "compiled information."[2] Even so, Jones should not

---

[1]*See In re Adoption of Admin. Order No. 19–Access to Court Records*, 369 Ark. App'x 525 (2007) (per curiam).

[2]*Id.* § (III)(A)(10).

have required Courthouse Concepts to execute a license agreement under section (VI)(B)(5) because that section is inapplicable to the type of request made here.

Order 19 defines "compiled information" as information "derived from the selection, aggregation, or reformulation of information from more than one court record."[3] Here, Courthouse Concepts sent a request to Jones for "all court records" pertaining to an identified individual (Individual A). Its request required Jones to search multiple sources for "all court records" involving Individual A, *select* his unsealed criminal record(s), *reformulate* that information from daily docket sheets, and *aggregate* that information into a new report. Thus, this information was "compiled information" as defined by the Order.

In concluding that the request was not for compiled information, the majority cites the Order's commentary, which expounds on the definition of "compiled information."[4] While the majority opinion italicizes the second sentence of the comment, it critically neglects the first sentence: "compiled information is different from case-by-case access because it involves information from more than one case."[5] Thus, if as explained by affidavit, Jones had to aggregate criminal "information from more than one case" into a new report containing the entire criminal background history of Individual A, then certainly the request was for compiled information, as the comment describes.

---

[3]*Id.*

[4]*Id.* cmt. § (III).

[5]*Id.*

Yet what has been lost by everyone here, including the parties, the circuit court, and now this court, is the heart of this dispute—Jones's application of section (VI)(B)(5) of Order 19 when she required Courthouse Concepts to execute a license agreement before releasing the information.[6] PBSA contends that Courthouse Concepts, and others like it, cannot legally execute this agreement because it cannot attest that its request is for "a scholarly, journalistic, political, governmental, research, evaluation, or statistical purpose."[7] However, not all compiled information requires a license agreement. Section (VI)(B)(5) requires the requester to execute a license agreement only when the "identification of specific individuals is essential to the purpose of the request."[8] The commentary explains that "names, addresses, and dates of birth will only be provided in compiled form when the requester" completes an agreement.[9] But the request at issue did not ask for the "identification of specific individuals," like name(s) and date(s) of birth. In fact, the opposite occurred: Courthouse Concepts itself provided Individual A's identification. Only after providing this identifying information did it ask Jones to provide compiled information. Jones erred in requiring Courthouse Concepts execute an agreement.

---

[6]Counsel for PBSA explained at the start of the first trial court hearing that "[t]he principal problem is that it's not possible for criminal background check companies to comply with the licensing agreement."

[7]Ark. Sup. Ct. Admin. Order No. 19(VI)(B)(5).

[8]*Id.*

[9]*Id.* cmt. § (VI).

Consequently, though the circuit court's reasoning was incorrect, I would affirm its decision requiring Jones to release the information. Order 19, not FOIA, applied to Courthouse Concepts' request, and Jones should have released the requested information without requiring the execution of a license agreement.

For these reasons, I concur.

**JOHN DAN KEMP, Chief Justice, concurring on direct appeal and dissenting on cross-appeal.** I join the majority's holding to affirm the circuit court's award of summary judgment to appellee Professional Background Screening Association, Inc. ("PBSA") on its FOIA claim. I respectfully dissent from the majority's decision to affirm the cross-appeal because I would dismiss it as moot.

It is a well-settled rule that this court does not render advisory opinions or answer academic questions. *Stilley v. McBride*, 332 Ark. 306, 965 S.W.2d 125 (1998). Under Arkansas law, a case becomes moot when any judgment rendered would have no practical effect on an existing legal controversy. *Id.*, 965 S.W.2d 125.

In the case at bar, both parties filed motions for summary judgment. Specifically, in appellant Jones's motion for summary judgment, she stated, "[PBSA's] claims all fail as a matter of law. The claims related to [Administrative Order] 19 are not ripe for judicial review, and the FOIA does not apply as a matter of law."

The circuit court ruled,

> (1) The Court declares that the request for court records submitted by Courthouse Concepts on July 10, 2018 . . . is not a request for "compiled information" within the meaning of Arkansas Supreme Court Order 19 and

21

Supreme Court Order 19 provides no basis for Ms. Jones to refuse to respond to that request;

(2) The request for court records submitted by Courthouse Concepts on July 10, 2018 was a valid request under the Arkansas Freedom of Information Act (Arkansas FOIA);

(3) By failing to respond to the request, Ms. Jones committed a violation of Arkansas FOIA;

(4) Ms. Jones is ordered to respond to the July 10, 2018, FOIA request;

(5) Because Ms. Jones has an antiquated computer system and was acting on advice received by the Arkansas Administrative Office of the Courts and Attorney General Opinion 2015-121 (April 14, 2016) in denying the request, the Court finds that her position was substantially justified and, therefore, Plaintiff is not entitled to recover attorneys' fees or other litigation expenses under the Arkansas FOIA;

(6) Because the Court concludes that the Arkansas FOIA issue drives this case, the Court hereby grants Ms. Jones's motion for summary judgment on [PBSA's] claims alleging that Administrative Order 19, as applied by Ms. Jones, violates [PBSA] members' rights to access court records under the First Amendment and/or federal common law[.]

Here, the circuit court granted PBSA's motion for summary judgment on the FOIA claim and expressly stated that the "FOIA issue drives this case." Then, with no analysis or rationale, the circuit court granted Jones's motion for summary judgment "on [PBSA's] claims alleging that Administrative Order 19, as applied by Ms. Jones, violates [PBSA] members' rights to access court records under the First Amendment and/or federal common law." Based on the circuit court's FOIA ruling, I would not review the circuit court's additional ruling on Administrative Order 19 because to do so would render an advisory

opinion. *See Steinbuch v. Univ. of Ark.*, 2019 Ark. 356, 589 S.W.3d 350. Thus, I would dismiss PBSA's cross-appeal as moot.

Concur on direct appeal; dissent on cross-appeal.

HART and WOMACK, JJ., join the dissent on cross-appeal.

*Leslie Rutledge*, Att'y Gen., by: *Jennifer L. Merritt*, Sr. Ass't Att'y Gen., for appellant/cross-appellee.

*Burr & Forman LLP* (Birmingham, AL), by: *E. Travis Ramey*, *pro hac vice*; *Burr & Forman LLP* (Nashville, TN), by: *Zachary D. Miller*, *pro hac vice*; and *Waddell, Cole & Jones, PLLC*, by: *Kevin W. Cole* and *Justin E. Parkey*, for appellee/cross-appellant.